FIRST UNITARIAN SOCIETY OF HARTFORD *vs.* THE TOWN
OF HARTFORD.

First Judicial District, Hartford, May Term, 1895.   ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY AND HALL, Js.

Section 3823 of the General Statutes exempts from taxation the "personal
property" of any ecclesiastical society, "consisting of bonds, mort-
gages, or funds invested," to an amount not exceeding $10,000; pro-
vided such property is held and used exclusively for the maintenance
of public worship, etc.   *Held* that real estate of such a society, although
purchased with money derived from the sale of government bonds, was
not exempt from taxation as "funds invested," within the meaning
of the statute.

Section 3820 exempts from taxation "buildings exclusively occupied as
churches."   The plaintiff occasionally rented its church building for
lectures, concerts, readings, amateur theatricals, and other like enter-
tainments, applying the revenue therefrom for the maintenance of
religious worship in such church.   *Held* that in view of the general
and long continued practice in this State to occasionally use church
buildings for such purposes, it could not be supposed that the legis-
lature intended, by the language of the statute, to make all church
buildings so used taxable, and that the plaintiff's church building was,
therefore, under § 3820, exempt from taxation.

[Submitted on briefs May 7th—decided June 22d, 1895.]

APPEAL from the doings of the board of relief of the town
of Hartford, in confirming the action of the assessors of said

town in assessing for taxation certain real estate of the plaintiff; taken to the Superior Court in Hartford County, and reserved by that court, *Robinson J.*, upon the facts found, for the advice of this court.

By the finding it appears that:—

" 1. The plaintiff is an ecclesiastical society, duly organized under and by virtue of the statute laws of this State, and existing as such since the year 1844.

" 2. On the 12th of April, 1879, said society then having a fund of $64,000, which arose from the sale of their former church property, already invested in United States bonds, formed a constitution for their government, declaring the objects and purposes of the society as follows, *viz:* ' The objects of this society shall be the learning, teaching, and practice of the truths and principles of a pure religion, the enjoyment and support of public worship, the affording of a spiritual home and fellowship with Christian sympathy and assistance to all who by creed or tradition are debarred from other churches, and co-operation with all other workers in advancing the moral reforms of society, and in extending over the earth the reign of righteousness, temperance, love, and good-will.' And said constitution also contained the following article, *viz:* ' Inasmuch as the funds of the society were originally contributed by its older members, and by their fidelity, care, and business sagacity, have been increased to the present sum, these older members (naming them) shall constitute and are hereby constituted and continued a Board of Trustees, to have exclusive management of said funds for the benefit of the society, the same as now; provided that whenever the society shall vote to procure or build a place of its own for its meetings, an amount not exceeding half of the sum then in hand shall be devoted to such a purpose, and that the yearly income of all its property, without trenching on the principal, shall be used for the current expenses of the society. * * * This article is not to be changed or amended except by concurrent action of the society and said Board of Trustees, and the funds under no

circumstances are to be alienated from the support of liberal Christianity.'

" 3. In the year 1880, as requested by vote of the society, the Board of Trustees purchased a lot at 26 Pratt street, for the purpose of erecting a church building, for which lot they paid from said fund $20,000 ; and in 1881 said society erected a church building on the rear half of said lot at a cost, including the half of said lot (estimated at $10,000), and the equipment of said church, of the sum of $30,000, the balance of $20,000 being paid from said fund ; and said building was duly dedicated as 'Unity Church and Hall' on the 3d day of April, 1881, and from that day to the present time has been regularly and statedly occupied for religious worship.

" 4. On the 14th of April, 1881, the society made their religious service entirely free, and on said date the following vote was passed by the said Board of Trustees, to wit : ' Voted, that said committee are hereby instructed to take special care of all the property in the hands of this board, not in the hands of the treasurer, and collect and pay all income received into the hands of the treasurer of this board, which income is hereby appropriated, as well as all income of the funds, to the use of the society, to pay the running expenses of the coming year ; and said committee shall have liberty to derive income by renting the church building for lectures, concerts, readings, and any other thing not inappropriate to be had in a church.'

" 5. The audience room of Unity Church and Hall is constructed after the amphitheater pattern, much resembling the ordinary arrangement of theaters, furnished with chairs similar to those put in theaters, and numbered and arranged for convenience in the sale of tickets for entertainments therein.

" 6. Said Unity Church and Hall is also provided with a platform or stage, facilitating the use of said church, audience-room or hall for entertainments and amusements. The society derives a considerable revenue, to wit, from $500 to $600 per year, for rentals of said church, audience-room or hall, to parties desiring to give entertainments. This revenue

is used by said society for the maintenance of religious services in said church and hall.

" 7. Some of the entertainments permitted for hire in said church and hall have consisted of lectures, concerts (vocal and instrumental), mesmeric performances, dramas by amateurs, and at times political conventions.

" 8. After the completion ·and equipment of their said church and hall building in 1881, the society had, unoccupied, the front half of the lot before mentioned, and about $24,000 in United States government bonds, all which principal sum remained until 1892 in personal estate.

" 9. In 1891 and 1892 said society erected on the front portion of their said lot, a building which is known as Unity Building. This Unity Building the society has since rented for stores and offices, and the Board of Trustees of the society used the balance of their fund of $64,000, to wit, the $24,000 above referred to, in erecting said building, and all the net income of this latter building has been used exclusively for the maintenance of religious services in said Unity Church and Hall."

*Elisha Carpenter* and *Horace Cornwall*, for the plaintiff.

I. The building known as Unity Church and Hall is ex· empt from taxation under the laws of this State. General Statutes, § 3820.

·There is nothing in the use of the church of an immoral character; on the contrary, its uses were of a literary, scientific, benevolent or educational character, and nothing· but what is had in most of our churches.

In every case where the question of income or use of ecclesiastical or church property, or other property exempt, has been discussed in our courts and courts of other States, the inquiry has always been as to what use was made of the income, was it devoted to *pious* or *secular* uses,—notably in the case of *Spiritualist Camp-meeting Asso.* v. *East Lyme*, 54 Conn., 152,—where if the court had found the income of the church had been used exclusively for religious worship, they would

have found the church exempt,—and *Temple Grove Seminary*
v. *Cramer*, 98 N. Y., 121.

The society is not confined in the occupation of their
church simply to a service of prayer, sermon, and song, in
order to avail itself of the statute of exemption; the law was
never intended to mean any such thing; it means to exempt
from taxation those churches and religious societies who are
using their church and property not only for prayer, sermon,
and song, but for all those agencies which are calculated to
uplift and educate the people within the circle of its influence
in every department of life. *Trustees Wesleyan Academy* v.
*Wilbraham*, 99 Mass., 599; *Meeting House* v. *City of Lowell*,
1 Met., 538; *Mass. Gen. Hospital* v. *Somerville*, 101 Mass.,
319; *Salem Lyceum* v. *City of Salem*, 27 N. E. Rep., 672;
*New Haven* v. *Sheffield Scientific School*, 59 Conn., 163; *Providence* v. *City of Providence*, 6 R. I., 235.

II. The plaintiff claims that $10,000 at least of the invested
fund of the society secured in Unity Building, is exempt from
taxation by statute, § 3823.

If the fund remained in bonds and mortgages and the
income was exclusively used for religious worship, without
doubt $10,000 would be exempt under said statute. Is there
any difference, under the words of the statute, when the facts
show that the fund of $24,000 was in said building, and all
income of the fund was exclusively paid by the board of
trustees, who control the building, to the society committee,
and by them exclusively devoted to maintain religious worship?

*John H. Brocklesby* and *William F. Henney*, for the defendant.

I. The power to tax is inherent within the State, and the
presumption of law is against its release in any instance.
Endlich on Interpretation of Statutes, p. 497; Cooley on
Taxation, 2d Ed., 5, 19; 25 Amer. & Eng. Ency. of Law, 18;
*Phila. & R. R. R. Co.* v. *Maryland*, 51 U. S., 376; *Transportation Co.* v. *Wheeling*, 99 id., 279; *Chicago, B. & K. C. R.
R. Co.* v. *Greffey*, 120 id., 569; *The People et al.* v. *Com'r of*

*Taxes of N. Y.*, 95 N. Y., 556; *Coite* v. *Society for Savings*, 32 Conn., 183.

II. Statutes or charters exempting property, persons, or corporations, from the common burden of taxation, are to be strictly construed. The intention of the legislature to grant the immunity claimed must be clear beyond a reasonable doubt. 25 Amer. & Eng. Ency. of Law, 157; 2 Beach on Private Corporations, 1290, § 827; *Yazoo, etc., R. R. Co.* v. *Thomas*, 132 U. S., 174; *Buffalo City Cemetery* v. *City of Buffalo*, 46 N. Y., 509; *First Methodist Episcopal Church* v. *City of Chicago*, 25 Ill., 487; *St. Mary's College* v. *Crawl*, 10 Kan., 450; *Cincinnati College*, v. *State*, 19 Ohio., 110; *State* v. *Board, etc.*, 34 La. Ann., 574: *Manresa Institute* v. *Town of Norwalk*, 61 Conn., 231; *New Haven* v. *Sheffield Scientific School*, 59 id., 166.

The using or leasing of property for corporate income, which would otherwise be exempt, is everywhere held to defeat the exemption. This was the case in *Camp Meeting Association* v. *East Lyme*, 54 Conn., 154.

III. In all cases where exemptions of this character are claimed, it is necessary that those making such claims should show a state of facts entitling the property to exemption. *Wyman* v. *City of St. Louis*, 17 Mo., 337; *Y. M. C. A.* v. *New York*, 113 N. Y., 187; *Congregation K. I. A. P.* v. *New York*, 52 Hun, 507; *Old South Society* v. *City of Boston*, 127 Mass., 378; *Third Congregational Society* v. *City of Springfield*, 147 Mass., 397; *Hennepin* v. *Grace*, 27 Minn., 503; *State* v. *Axtell*, 41 N. J. L., 117; *New Haven* v. *Sheffield*, 30 Conn., 160; *Lord* v. *Litchfield*, 36 id., 116.

IV. The claim of the plaintiff that under § 3823, $10,000 of a certain fund invested in Unity Building should be exempt from taxation, is not tenable, for the reason that it is not the investment of a "fund" within the meaning of the statute. The original fund has disappeared, and in its stead the society have become owners of a block of real estate. This they rent, and from such renting derive profit for the corporation and compete with other landlords for remunerative tenants.

ANDREWS, C. J.    The plaintiff claims that Unity Building is exempt from taxation, by reason of the provisions of § 3823 of the General Statutes.    We cannot assent to that claim. By that section only personal property can be exempted. Unity Building is not personal property, with whatever form of funds it may have been purchased.    "Funds invested," as that expression is used in the section, means invested in a form like bonds or mortgages.

Unity Church and Hall is exempt from being taxed, if it is a building exclusively occupied as a church; otherwise not.    The plaintiff is an ecclesiastical society in the town of Hartford, duly organized pursuant to the statutes of this State, and has existed as such for more than fifty years.    In 1880 it purchased a lot of land for the purpose of erecting thereon a church building, and in 1881 it did erect on the rear part of that lot a church building, which was on the 3d day of April, 1881, dedicated as Unity Church and Hall; and from that day to this time the said building has been regularly and statedly occupied for religious worship.

If the finding stopped here, it would be reasonably clear that this building should not be assessed for taxation.    It is what follows that causes any doubt.    It appears that a few days after the church was dedicated, the society made their religious services free to all worshipers, and authorized its committee "to derive income by renting the church building for lectures, concerts, readings, and any other thing not inappropriate to be had in a church."    The society has derived from such rentals some five or six hundred dollars a year, which it has used exclusively for the maintenance of religious services in said church and hall.    Some of the entertainments so permitted for hire in said church and hall, have consisted of lectures, vocal and instrumental concerts, mesmeric performances, dramas by amateurs, and at times political conventions.

The expression used in the statute, "occupied as a church," must be taken to mean occupied as a church building is usually occupied, or as a church building may properly be occupied; because that is the ordinary meaning of the words.

And the plaintiff has exclusively occupied Unity Church and Hall as a church, unless some of the things it has permitted to be done there have, within the meaning indicated, interrupted such occupation.

Very many ecclesiastical societies defray the expenses of their religious services by requiring worshipers.to pay a rent. for the pews or seats which they occupy at such services. The plaintiff, in the hope perhaps that the poor might have the gospel preached unto them, made the seats in its audience-room free to all worshipers on all occasions of its stated religious services, and sought to defray the expenses of such services by renting its audience-room at other times for lectures, concerts, readings, and other things not inappropriate to be had in a church. If the method of raising money with which to pay the expenses of their religious services practiced by the many ecclesiastical societies, does not interrupt the exclusive occupation by any one of these of its church building as a church, it must be conceded that the method of raising money for the same purposes practiced by the plaintiff, does not interrupt its exclusive occupation of Unity Church and Hall as a church. In neither case is the money earned for or applied to a secular use. *Conn. Spiritualist Camp-Meeting Assn.* v. *East Lyme*, 54 Conn., 152; *Manresa Institute* v. *Norwalk.* 61 id., 228.

The policy on which the exemption of church buildings from taxation is granted, is the encouragement of religion; and that policy is not hindered, but rather promoted, by permitting this building to be used for profit, when not needed for those services distinctly called religious services; for literary, scientific or entertaining exercises, or for any other thing not inappropriate to be had in a church. In earlier times in this State, and in all the New England States, the church—commonly called the Meeting House—was customarily used for town meetings, lectures, concerts, temperance meetings, political addresses, and for other like special occasions; and no one ever supposed that such use made the Meeting House liable to taxation. In the country towns the like use still prevails. In view of such general use it is not

to be supposed that the legislature intended, by any language it has used, to make all such church buildings taxable.    We think Unity Church and Hall is exempt from taxation.

The Superior Court is advised to render judgment that Unity Building is taxable, and that Unity Church and Hall is not taxable.

In this opinion the other judges concurred.