CHICAGO AND EASTERN ILLINOIS RAILROAD COMPANY
*v.* THE STATE, EX REL. WILLIAM A. KETCHAM,
ATTORNEY-GENERAL.

[No. 18,618. Filed Nov. 16, 1898. Rehearing denied Oct. 3, 1899.]

STATUTES.—*Construction.*—Where the legislature expressly states the meaning which is to be given to a term used in an act, that meaning must be given to such term as so used. *pp. 138, 139.*

CORPORATIONS. — *Consolidation.*—*Articles of Incorporation.*—*Statutes.*—*Construction.*—*Railroads.*—Treating the acts relative to the incorporation and consolidation of corporations as in *pari materia* (Acts 1891, pp. 84, 392 and Acts 1895, p. 255) the term "corporation" is to be construed as including also consolidations of corporations, and so far as concerns the filing of articles of incorporation, as provided in said acts, a consolidation of two or more corporations is to be treated as simply a corporation. *p. 139.*

SAME. — *Articles of Incorporation.* — *Consolidation.* — *Penalties.* — *Railroads.*— The act of 1895 amending the acts of 1891 relative to the incorporation and consolidation of corporations adds

nothing to the penalty imposed by the acts of 1891, but provides a method of enforcing the penalty provided in the former acts. *pp. 140, 141.*

CORPORATIONS.—*Consolidation.—Statutes—Title of Act.—Railroads.* —The act of 1895 amending the acts of 1891 relative to the incor- poration and consolidations of corporations is not invalid for the reason that the title of neither act makes any reference to articles of consolidations or to consolidated corporations, since a consoli- dated corporation is regarded simply as a corporation. *p. 142.*

CONSTITUTIONAL LAW.—*Statutes.—Title of Act.*—Article 4, §19 of the Constitution requires that the subject of an act shall be expressed in the title, but does not require that matters connected with and growing out of the subject-matter shall be expressed in the title of the act. *p. 142.*

STATUTES. — *Amendments. — Constitutional Law.—Corporations. — Railroads.*—The act of 1895 amending the acts of 1891 relative to the incorporation and consolidation of corporations is not retro- active, since such amendment was intended merely to furnish a remedy for the enforcement of the penalty of the acts of 1891; and where a penalty had been incurred under the acts of 1891, prior to the amendment of 1895, such penalty may be enforced under the provision of the amendatory act. *pp. 142, 143.*

JUDGMENTS.—*Former Adjudication.—Corporations.—Failure to File Articles of Incorporation.—Railroads.*—A suit by the State against a railroad company for the recovery of the fee provided by law for filing articles of consolidation, on the theory that the articles had in fact been filed and wrongfully withdrawn, in which the court held that the articles had not been filed, and that the fee could not be recovered, does not amount to a former adjudication of an action brought to compel the filing of such articles of incorporation, and for the recovery of such fee, under an amendatory act afford- ing a remedy for the enforcement of the penalty incurred, under the amended statute, by the failure to file such articles of con- solidation. *pp. 143, 144.*

CORPORATIONS.—*Interstate Commerce.—Railroads.*—The fee imposed by the acts of 1891 (Acts 1891, pp. 84, 392) as amended by the act of 1895 (Acts 1895, p. 255) for filing articles of incorporation, or con- solidation of corporations, is not a tax upon the right to carry on the business of interstate commerce, but is a tax upon the right to incorporate. *pp. 144, 145.*

From the Marion Circuit Court.   *Affirmed.*

*W. H. Lyford* and *A. C. Harris,* for appellant.

*William L. Taylor,* Attorney-General, *William A. Ketch- am, A. G. Smith* and *C. A. Korbly,* for State.

HOWARD, J.—By an act approved March 4, 1891 (Acts 1891, p. 84, §7631 Burns 1894), it was provided, amongst other things, that the Secretary of State should collect from certain corporations certain named fees, for the benefit of the State, as follows: First, for filing articles of incorporation; second, for filing a certificate of increase of capital stock; and, third, for filing "the articles of agreement, or a certified copy or duplicate thereof, of any consolidation of corporations having a capital stock." It was there further provided that "said articles of agreement of consolidations shall be treated as the articles of incorporation of the new consolidated corporations created by such articles of agreements of consolidation," and that the fees for filing such agreements should be the same in each case as for filing articles of incorporation "of a corporation having the same amount of capital stock as is provided for by the articles of agreement of consolidation for the new consolidated corporation, created by any such articles of agreement of consolidation."

By another act, approved March 9, 1891 (Acts 1891, p. 392, §3424 Burns 1894), it was provided, in addition, "That all persons, companies, corporations and associations hereafter desiring to incorporate under the laws of the State of Indiana, and who are not now by law required to do so, shall be and are hereby required to file with the Secretary of State certified copies or duplicates of their articles of incorporation or association, and no such corporation or association shall be deemed and held to be legally incorporated until the provisions of this act shall have been complied with."

On the 7th day of June, 1894, the appellant, which is a consolidated corporation, formed as such on June 6, 1894, and composed of an Illinois and an Indiana railroad company, appeared, by its agent, at the office of the Secretary of State, and tendered for filing its articles of agreement of consolidation; the capital stock therein fixed being in the sum of $25,000,000. On receiving information that the fee for filing the articles was $25,000 the agent withdrew the

papers; and the company thereafter declined to file its articles of agreement, and has hitherto failed to file them.

On the theory that the agent of the company had placed the articles of agreement in the hands of the Secretary of State for filing, and thereafter, when informed of the amount of the fee, had wrongfully withdrawn them, the State, alleging in effect that the articles had been filed, brought suit for the unpaid fee of $25,000. This case was decided against the State, it being found and held by the court that the papers were not in fact placed on file. *State v. Chicago, etc., R. Co.,* 145 Ind. 229. "The refusal of the agent to pay the legal fee demanded," said the court in that case, "prevented the filing of the document, and left the company in the same condition as though the transaction, or offer to file, had not taken place."

Afterwards, by an act approved March 11, 1895 (Acts 1895, p. 255, §3001a, Horner 1897), §1 of the act of March 9, 1891, *supra,* was amended to read as follows: "All persons, corporations, companies and associations desiring to incorporate under the laws of the State of Indiana, or desiring to enter into any agreement of consolidation of the interests, rights and powers of two or more existing corporations, and who are not now by law required to do so, shall be, and are, hereby required to file with the Secretary of State certified copies or duplicates of their articles of incorporation or association or of consolidation, and no such corporation, or association, or consolidation of corporations shall be deemed and held to be legally incorporated or consolidated until the provisions of this act shall have been complied with, and until such time they shall have no right or authority to do business within the State of Indiana, and any contract made or entered into by or with them under any pretended corporate or consolidated name shall be utterly void. In case any such pretended corporation, association or consolidation of corporation shall do or attempt to do any business within the State of Indiana, without having first filed its articles of

incorporation or consolidation, or copies thereof with the Secretary of State, and having paid the fee therefor, as now provided by law, the State shall, in addition to other remedies now provided by law, have the right to proceed against such pretended corporation or consolidation of corporations by suit in any court of competent jurisdiction for the recovery of any fee which would be due under the provisions of this act, the same as if their articles of incorporations or consolidation had been filed and any such court shall have the power to compel the filing of such articles. The provisions of this act shall also apply to all corporations, associations or consolidated companies now doing business in this State, and which have heretofore entered into articles of incorporation, or consolidation, but have failed, or refused, to file the same, or copies thereof, as required by the act of March 9, 1891, of which this is amendatory, and to pay the fees required by law."

On January 21, 1897, the State, on the relation of the Attorney-General, and by virtue of the authority given by the acts of March 4 and March 9, 1891, *supra*, invoking also the aid of the additional remedy conferred by the act of 1895, *supra*,—began this action to require the appellant to file its said articles of incorporation and consolidation, and to pay the fee prescribed therefor, and asking in addition that the corporation be restrained from doing business as such until such filing and payment should be made. Judgment was rendered in accordance with the prayer of the complaint, and this appeal followed.

Counsel for appellant first urge the insufficiency of the complaint. Under this head the three acts of March 4, 1891, March 9, 1891, and March 11, 1895, are taken up separately; and it is argued that there could be no right of recovery, as against appellant, under any one of those acts. The argument so made is a specious one, even as shown in appellant's own brief, in which it is said, citing *Doe* v. *Avaline*, 8 Ind. 6, that: "Where two or more laws are passed at different times,

and all relate to the same subject-matter, although one may be an amendment of the other, or may even repeal the other, they must all be construed together, and the court is not at liberty to presume that the legislature intended to give different meanings to the same words in different statutes which are in *pari materia.*" To this may be added that, where the legislature expressly states the meaning which is to be given to a term used in an act, that meaning must be given to such term as so used.

In considering the sufficiency of the complaint, we must therefore construe together, and not separately, the three acts, *supra,* upon which the complaint is based. In the third specification of §1 of the earliest of these acts (that of March 4, 1891), as we have already seen, the legislature plainly expressed its intention that, for the purposes of filing and collection of fees therefor, "articles of agreement of consolidation shall be treated as the articles of incorporation of the new consolidated corporations," and that fees for filing such articles of consolidation shall be the same as for filing the articles of a corporation having the same amount of capital stock "as is provided for by the articles of agreement of consolidation for the new consolidated corporation." Acts 1891, p. 84. Words could hardly be clearer to show that in all three of the acts, which must be treated as in *pari materia,* the term "corporation" is to be construed as including also consolidation of corporations, and that a consolidation is but a new corporation formed out of two or more preëxisting corporations. All therefore which is so learnedly said by counsel as to the distinction between corporations and consolidations of corporations is of no effect here. So far as concerns the filing of articles provided for in the acts under consideration, a consolidation of two or more corporations is to be treated as simply a corporation.

In this connection may also be noticed the very inconsistent contention that appellant is not in fact a consolidated corporation, but that the Indiana corporation, the Coal Rail-

way Company, has been merely merged into the Illinois cor-
poration, the appellant railroad company.  This is evidently
an afterthought, and quite out of harmony with the form
and substance of the articles themselves, whose very lan-
guage shows them to be a plain, ordinary and unambiguous
agreement of consolidation.  Averments in appellant's an-
swer are to the same effect, notwithstanding the use of the
word merger: "It was deemed proper and lawful, and it was
proper and lawful, that the legal title of all the property of
said Chicago & Indiana Coal Railway Company should be
vested in this defendant by the formal consolidation of said
companies, and the merging of the property, rights, and
franchises of the said Chicago and Indiana Coal Railway
Company into and with the property, rights, and franchises
of the defendant, which consolidation and merger were duly
authorized by the laws of the states of Indiana and Illinois,
wherefore, on the 6th day of June, 1894, said companies
entered into formal articles of consolidation."  That the new
corporation should take the name of one of the constituent
corporations out of which it was formed is, of course, im-
material.  So also is the circumstance that the legislature,
in the act of 1895, supra, proceeded to elaborate the lan-
guage that had been used in the act of March 9, 1891.  We
have seen that, so far as concerns the requirements of all the
acts referred to, a consolidation is to be regarded as a cor-
poration.  That the act of 1895 emphasizes this conclusion
goes only to show that such was the original legislative in-
tent.

The purpose of the act of 1895 was not to impose any
additional obligation upon any corporation or consolidation
of corporations, but only to furnish the State with a remedy
for the enforcement of the obligation already imposed by the
acts of 1891.  By the act of March 9, 1891, all corporations,
whether simple or consolidated, were "required to file with
the Secretary of State certified copies or duplicates of their
articles of incorporation or association."  The full penalty for

failure so to file such articles was also imposed in said act of 1891, where it was further declared that "no such corporation or association shall be deemed and held to be legally incorporated until the provisions of this act shall have been complied with." To these penalty words the act of 1895 added the following: "And until such time they shall have no right or authority to do business within the State of Indiana and any contract made or entered into, by or with them under any pretended corporate or consolidated name shall be utterly void." It needs no argument to show that these words of the act of 1895 added nothing to the penalty imposed by the act of 1891. The words added served only to elaborate, emphasize, and explain. If the corporation could not be deemed legally incorporated or consolidated until it had complied with the provisions of the act, it is plain that until it had so complied with such provisions it could have no right to do business within the State, and any contract entered into under its pretended corporate name must be void. The means of enforcing the penalty, however, and of compelling the delinquent to comply with the law, were not given in either of the acts of 1891. To give such remedy was the purpose of the act of 1895. It was therefore provided in that act that "in case any such pretended corporation, association, or consolidation of corporations shall do or attempt to do any business within the State of Indiana, without having first filed its articles of incorporation or consolidation, or copies thereof, with the Secretary of State, and having paid the fee therefor, as now provided by law, the State shall, in addition to other remedies now provided by law, have the right to proceed against such pretended corporation or consolidation of corporations by suit in any court of competent jurisdiction for the recovery of any fee which would be due under the provisions of this act, the same as if their articles of incorporation or consolidation had been filed and any such court shall have the power to compel the filing of such articles." This provision gave ample warrant

for the bringing of the action, and, in connection with the evidence, fully authorized the court to render the judgment entered below.

A labored effort is made, on the same theory, to show that the act of 1895 is invalid for the reason that neither the title of this act, nor the title of the act of March 9, 1891, of which it is amendatory, makes any reference to articles of consolidation or to consolidated corporations. We think it must be plain, from what we have said, that, for the purpose of filing articles, as required by the three acts under consideration, a consolidated corporation is regarded simply as a corporation, and that everything said in any of the acts in regard to a simple corporation applies equally to a consolidation of corporations or a consolidated corporation. The legislature has so defined the words. Besides, counsel are in error in assuming that matters connected with and growing out of the subject-matter of an act must be expressed in the title. If that were so it would make the title as interminable and detailed as the act itself. But it is only the subject that must be expressed in the title. The constitutional provision (article 4, §19) is that "every act shall embrace but one subject and matters properly connected therewith; which subject shall be expressed in the title." The subject of the amended act of March 9, 1891, is the filing of articles of incorporation by "all persons, companies, corporations and associations desiring to incorporate under the laws of the State of Indiana." All this, and more, is expressed in the title. Appellant admits that, had the title of the act of 1891 been simply "An act concerning corporations," it would have been sufficient to make the amendatory act of 1895 valid in this respect. Surely, then, the unnecessarily extended and elaborate title given to the act of 1891 must be sufficient.

It is contended, also, that the act of 1895 is retroactive, and hence unconstitutional and void. This is on the theory that the penalty clause of that act imposes an obligation upon appellant which did not exist under the acts of 1891. We

have seen, however, that there is no additional penalty imposed by the act of 1895. That act, while elaborating and explaining provisions of the act of March 9, 1891, was intended merely to give to the State a remedy for the enforcement of the penalty incurred under the two acts of 1891. Appellant's failure to file its articles of consolidation occurred after the acts of 1891 went into force. The act of 1895 did not fix or attempt to fix any penalty for such failure of appellant to obey the law. That penalty had already been incurred, and the act of 1895 merely furnished the means for its enforcement. The act of 1895 consequently does not violate the obligation of contracts, does not deprive appellant of its property without due process of law, does not deprive it of the equal protection of the law, and does not interfere with vested rights.

Counsel for appellant next urge the plea of former adjudication, insisting that the matters here in issue were determined against the State in the former action. *State* v. *Chicago, etc., R. Co.,* 145 Ind. 229. But in that case the State sued for the fee provided for filing the articles of consolidation, on the theory that the articles had in effect been filed, and then wrongfully withdrawn. The court, however, found that the articles had not been filed, and hence that the fee could not be recovered. Will it be said that, if the company afterwards filed the articles, no fee could be recovered, or that, if the law afterwards afforded a remedy for compelling their filing, the fee could not be recovered? Before the plea of former adjudication can be invoked, it must appear, not only that the thing demanded in the present action is the same as that demanded in the former action, and that it is between the same parties, or their privies, and was found for one of them against the other in the same quality, or suing in the same right, but it must also appear that the cause of action is the same. *Kitts* v. *Willson,* 140 Ind. 604, and authorities there cited. Because it may be determined that one has not a right to recover, it does not follow that he may

not afterwards recover, on acquiring new rights or titles. An adjudication, says Judge Van Fleet, "simply determines which party had the right or title at the time the suit was commenced, or, at furthest, at the time of the final judgment; thus not preventing either party from asserting any right or title which he may afterwards acquire." Former Adjudication, §145, and following, and cases there cited.

The action in the case at bar is not the same as in the former case. There it was to recover a fee for filing articles of incorporation or consolidation. Here it is to compel the filing of such articles, and to restrain the company from acting as a corporation until the articles are filed, and the fee therefor paid. The issue here tried could not be considered in the former action, for the reason that the State had not then acquired the right to bring the action here instituted. Only matters within the issues are barred. · See numerous illustrations in Van Fleet's Former Adj., cited above. It is quite beside the question to say that, because the State might have instituted some other suit at the time the former action was brought, it therefore follows that the action actually brought was an adjudication of the matters at issue in the present action. The question is, rather, whether the relief sought in the present action could have been had in the. former, and not whether mandamus or some other remedy might then have been resorted to. In so far as the State wa without power to institute the present suit until after authority to do so was given by the act of 1895, the question presented is much like that in case of a suit prematurely brought, which is no bar to a subsequent suit brought in due time. See *Athearn* v. *Brannan*, 8 Blackf. 440; *Duncan* v. *Holcomb*, 26 Ind. 378; *Wilson* v. *Fatout*, 42 Ind. 52; *Roberts* v. *Norris*, 67 Ind. 386; *Griffin* v. *Wallace*, 66 Ind. 410; *Kitson* v. *Hillabold*, 95 Ind. 136; *Miller* v. *Manice*, 6 Hill (N. Y.) 114.

The contention that the fee imposed by the acts under consideration is a tax on interstate commerce, and therefore

void, is of little merit. The fee is not a tax upon the right to carry on the business of interstate commerce, but a tax upon the right to incorporate. The State is not required to authorize the formation of a corporation, or the consolidation of two or more corporations; and, if it does give authority to form such corporations or consolidations, it may impose such conditions as it sees fit. The tax is on the right to exist as a corporation, and not on the business done by the corporation. In 6 Thompson Corp. §8120, the author says: "There appears to be no essential distinction between a tax upon franchises, when applied to a domestic, and to a foreign corporation. A franchise tax, when applied to a domestic corporation, is a tax upon the right of a corporation to exercise the *privilege* conferred upon it, and is *not a property tax.* \* \* \* The manner in which the value of its franchise shall be assessed, and the rate of taxation applied thereto, are matters of *legislative discretion,* subject to the restrictions of the domestic constitution; and no question in respect of such a tax arises under the federal constitution." And in *Ashley* v. *Ryan,* 153 U. S. 436, the court said: "A state, in granting a corporate privilege to its own citizens, or, what is equivalent thereto, in permitting a foreign corporation to become one of the constituent elements of a consolidated corporation, organized under its laws, may impose such conditions as it deems proper, and the acceptance of the franchise in either case implies a submission to the conditions without which the franchise could not have been obtained." Finding no error, the judgment is affirmed.

It is ordered by the court that this opinion be certified down at once.