GREENBUSH CEMETERY ASSOCIATION *v.* VAN NATTA.

[No. 6,926. Filed April 28, 1911. Rehearing denied June 28, 1911.
Transfer denied January 11, 1912.]

1. CEMETERIES.—*Taxation.*—*Constitutional Law.*—The Constitution (Art. 10, §1) providing that the general assembly shall provide for a uniform system of taxation of all property "excepting such only for municipal, educational, literary, scientific, religious, or charitable purposes, as may be especially exempted by law," authorizes the exemption from taxation of property of cemetery associations, used exclusively for burial purposes. p. 197.

2. TAXATION.—*Statutes.*—*Construction.*—Statutes for the taxation of property are construed liberally in favor of equality; and statutes exempting property from taxation are construed strictly. p. 197.

3. STATUTES.—*In Pari Materia.*—Statutes relating to the same subject-matter should be construed together. p. 198.

4. CEMETERIES.—*Taxation.*—*Statutes.*—Section 6 of the act of 1848 (Local Laws 1848, p. 444) incorporating the Greenbush Cemetery Association, providing that "all real estate so dedicated for the [cemetery] purposes aforesaid * * * shall forever be exempt from taxation," and section 11 thereof providing that "all moneys thereafter acquired by said association for the sale of lots * * * shall be held in trust and used exclusively for transacting the ordinary business of said association for the protection of said cemetery * * * and shall, upon no pretext whatever, be diverted from the objects contemplated in this section," must be construed with the law of 1843 (R. S. 1843 p. 208) providing that the following property shall be exempt from taxation; "every graveyard not exceeding ten acres," and with section 6 of the act of 1852 (1 R. S. 1852 p. 106), changing the above language to exempt "also every cemetery." p. 198.

5. STATUTES.—*Construction.*—*Intention.*—To ascertain the intention of a statute is the prime consideration in contruing it; and such intention is to be ascertained by a consideration of all the language used, the strict letter thereof yielding to the evident intent. p. 198.

6. STATUTES.—*Construction.*—*Aids.*—*Prior and Subsequent Statutes.*—*History.*—In construing a statute, prior and subsequent legislation on the same subject-matter may be considered as well as the history of the times. p. 199.

7. STATUTES. — *Construction.* — *Conflict.* — Where possible, effect should be given to all parts of a statute; and of two possible con-

structions, the one upholding the general purpose of the law is to be preferred. p. 199.

8. STATUTES.—*Strict Construction.*—*Intention.*—The evident intention of a statute should not be defeated because such statute is required to be strictly construed. p. 199.

9. STATUTES.—*General.*—*Special.*—*Repeal.*—A general statute covering the subject-matter of a special act, without apt language showing such intention, will not repeal such special act. p. 199.

10. STATUTES.—*Provisions for Construction.*—A statutory provision that the statute in question shall be liberally construed is mandatory, but does not annul the established rules of statutory construction. p. 200.

11. TAXATION. —*Cemeteries.* —*Funds.* —*Loaned.* —Money loaned at interest by the Greenbush Cemetery Association chartered by the act of 1848 (Local Laws 1848 p. 444) and which must inure exclusively to the uses of the cemetery owned and controlled by such association, is not taxable, such money being absolutely essential to the perpetuity of the association and necessary for the attainment of its expressed purposes. p. 201.

From Montgomery Circuit Court; *Jere West,* Judge.

Suit by the Greenbush Cemetery Association against J. Lyndon Van Natta. From a judgment for defendant, plaintiff appeals. *Reversed.*

*E. P. Hammond, William V. Stuart, Allison E. Stuart* and *Dan W. Simms,* for appellant.

*Charles E. Thompson* and *Whittington & Williams,* for appellee.

FELT, J.—Appellant is a cemetery association organized under a special charter enacted by the General Assembly of Indiana. This suit was brought to cancel and set aside an assessment, for taxation, of certain money belonging to appellant, made by the taxing officers of Tippecanoe county, with the assistance of certain special employes of the county, for the year 1903, and for nineteen years immediately prior thereto.

The errors assigned question the ruling on the demurrer to the second paragraph of appellee's answer and the correctness of the court's conclusions of law on the special

finding of facts. Our conclusion on the latter question makes it unnecessary to consider the former. The substance of the special findings shows that on February 3, 1848 (Local Laws 1848 p. 444), the General Assembly of Indiana enacted a special charter for appellant; that said act named and created certain persons "a body politic and corporate by the name of Greenbush Cemetery Association of Lafayette," with full power to contract, sue and be sued, etc., and "to do and perform all and singular the several duties of said association necessary to carry into effect the objects of this incorporation."

Said charter further provided: "Section 6. All real estate held by said association for burial purposes, whether laid off into lots or not, shall be deemed a perpetual dedication of the same for the purposes aforesaid, and shall forever be held by said association in trust for such purposes and none other; and that no part thereof shall ever be used or sold by said association for any purposes whatsoever, except as in this act excepted. And all real estate so dedicated for the purposes aforesaid, with the ground occupied by the sexton's house, and the garden thereto attached, and any road owned by the association, connecting their said ground with any public street or highway, shall forever be exempt from taxation.

Section 7. Said association shall have authority to sell, grant and convey to any person or persons the sole and exclusive right of burial on any lot or lots in said cemetery, and of erecting tombs, * * * subject to such regulations as said association may prescribe; and every right so granted and conveyed shall be held for the purposes aforesaid, and for none other. * * *

Section 11. The proceeds arising from the sale of the lots in said cemetery shall be applied under the direction of said trustees as follows, viz.: (1) To enclosing said ground and pay the expenses of platting the same. (2) To providing suitable roads and walks to and from and through said cem-

etery.   (3) To paying incidental expenses attending the management of the affairs of said association.   (4) To reimbursing the persons named in the first section of this act, or their heirs or assigns, for the amount by them advanced for the purchase of any ground contemplated in this act, with interest thereon from the date of its advancement. (5) All moneys thereafter acquired by said association from the sale of lots in said cemetery shall be held in trust, and used exclusively for transacting the ordinary business of said association for the protection of said cemetery, and for embellishing, adorning and ornamenting the same, providing sufficient and permanent enclosures, roads and walks, and for planting shrubs, trees and other rural ornaments; and shall, upon no pretext whatever, be diverted from the objects contemplated in this section.

Section 15.   This act shall be taken in all courts as a public act—shall receive a liberal construction, and shall be in force from and after its passage."

Pursuant to said charter, trustees were duly elected and title to eleven acres of real estate acquired and the land was platted into 2,890 lots, to be sold at a maximum price of $10 each; that said lots were sold at that price, except certain ones which were sold for less, and on August 15, 1903, all but thirty lots in said cemetery had been sold; that the amount of taxes claimed to be due is $1,919.98; that the funds arising from the sale of said lots over and above the immediate and necessary expenses incident to the maintenance of said cemetery, have been loaned by appellant at interest from time to time in the counties of Tippecanoe, White, Clinton, Benton and Jasper, from the time of the organization of the association up to the present time; that at the time this suit was commenced the loans outstanding amounted to $20,700, and appellant had on hand the further sum of $1,416.19 available and ready to be loaned; that said association has, from the date of its organization until the present time, been managed and controlled by a board of

trustees, that has served without any compensation whatever, which board has sold said lots, received the money therefor, made improvements upon said cemetery, and kept and maintained it, and made all said loans; that the sole and only source of future income for said association is the interest that may be earned upon funds loaned and the future sale of said thirty unsold lots, at $10 each; that the annual expense of maintaining said cemetery in good order and condition, and in the manner in which it has heretofore been kept, will at all times aggregate the sum of not less than $1,750; that the moneys and credits assessed against appellant for taxation were the sole and only moneys and credits then owned and possessed by said association, and constituted the funds then owned and possessed by it, which had arisen from the sale of lots and the interest earnings upon the funds loaned, as aforesaid; that no officer of said association, nor any lot owner in said cemetery, nor any person interested therein, has ever received any pecuniary benefit therefrom; that said cemetery is located in a populous portion of said city, and is bounded and surrounded on all sides by residence properties; that at the time this action was commenced there were buried in said cemetery 4,414 persons; that all the funds assessed for taxation were held for no other use or purpose than paying the expenses of maintaining and keeping said cemetery in good condition, and for a perpetual loan fund, the income of which was intended to be used and applied to no other use or purpose than to pay the expenses of keeping and maintaining said cemetery; that the annual income, without paying taxes, is less than the annual expense of maintaining said cemetery.

On this finding of facts the court stated its conclusions of law in favor of appellee, that appellant take nothing by its suit.

The validity of the assessment for taxation of appellant's said property depends primarily on the provisions of its charter; also upon our general laws for the taxation of prop-

erty and our legislative enactments relative to ceme-
teries, and especially the act of 1895.  Acts 1895 p. 18,
§4708a Burns 1901.  Our Constitution (Art. 10, §1)
authorizes the General Assembly to provide by law for a
uniform and equal rate of assessment and taxation, "except-
ing such only for municipal, educational, literary, scientific,
religious, or charitable purposes, as may be especially ex-
empted by law."  Property of cemetery associations, used
exclusively for burial purposes, is within the class exempted
by this provision.  *Oak Hill Cemetery Co.* v. *Wells* (1906),
38 Ind. App. 479; *Divenger* v. *Geary* (1888), 113 Ind. 106,
112.

Sections 10144, 10145 Burns 1908, Acts 1893 p. 12, Acts
1891 p. 199, §6, provide, in substance, that church property,
occupied as such, not exceeding ten acres, and every ceme-
tery, shall be exempt from taxation, and that if such prop-
erty, or any part thereof, is used or occupied for other pur-
poses, the part so used or occupied shall be subject to tax-
ation.

The act of 1895, *supra,* provides, in substance, that in all
cases where cemeteries are incorporated under the laws of
this State, upon such a basis that the corporation cannot
derive any pecuniary benefit or profit therefrom, all the
property and assets of such association so used exclusively
for cemetery purposes shall be exempt from taxation.  For-
mer laws have also provided that properties of graveyards
and cemeteries, not organized for pecuniary profit, are ex-
empt from taxation.  R. S. 1843 p. 208; 1 R. S. 1852 p. 106.

It is established in Indiana that laws are to be liberally
construed in favor of equal taxation, and that statutes ex-
empting property from taxation are strictly con-
strued.  *State, ex rel.,* v. *City of Indianapolis* (1879),
69 Ind. 375, 35 Am. Rep. 223; *Read* v. *Yeager* (1885),
104 Ind. 195; *Graham* v. *Russell* (1899), 152 Ind. 186;
*Flecner* v. *Litsey* (1903), 30 Ind. App. 399.

Statutes relating to the same subject-matter are *in pari*

*materia,* and should be construed together when necessary to ascertain and make effective the legislative intent.

3. *State* v. *Gerhardt* (1896), 145 Ind. 439, 461, 33 L. R. A. 313; *Lincoln School Tp.* v. *American School Furniture Co.* (1903), 31 Ind. App. 405; *United States Sav., etc., Co.* v. *Harris* (1895), 142 Ind. 226, 231; *Conn* v. *Board, etc.* (1898), 151 Ind. 517.

Section six of appellant's charter must be construed as *in pari materia* with the provisions of R. S. 1843 p. 208, in force in 1848, which provides as follows: "The fol-

4. lowing persons and property shall be exempt from taxation: * * * (6) Every building erected for religious worship, and the pews and furniture within the same, and the lands whereon said building is situate, not exceeding ten acres; also, every graveyard not exceeding ten acres."

Section six of the act of 1852 (1 R. S. 1852 p. 106), is the same as §6 of R. S. 1843, *supra,* except as to cemeteries, the language employed is changed to read "also every cemetery."

In construing any statute, the legislative intention must be kept constantly in view, and where the language is plain and unambiguous, the intention of the legislature,

5. as expressed by the act, must prevail, and there is no room for construction. The legislative intention, however, is to be ascertained from an examination of the whole as well as the separate parts of an act, and when so ascertained the intention will control the strict letter of the statute, or the literal import of particular terms, where to adhere to such strict letter or literal import of terms would lead to injustice, absurdity or contradictory provisions. *United States Sav., etc., Co.* v. *Harris, supra,* at page 231; *State, ex rel.,* v. *Roby* (1895), 142 Ind. 168, 182, 33 L. R. A. 213, 51 Am. St. 174; *Travelers Ins. Co.* v. *Kent* (1898), 151 Ind. 349; *Middleton* v. *Greeson* (1886), 106 Ind. 18, 21; 2 Lewis's Sutherland, Stat. Const. (2d ed.) §376.

To ascertain the legislative intent, courts may also look to the old law, if any, and to subsequent legislation on the same subject. *Lincoln School Tp.* v. *American School Furniture Co., supra,* at page 412; *Hunt* v. *Lake Shore, etc., R. Co.* (1887), 112 Ind. 69, 75; *May* v. *Hoover* (1887), 112 Ind. 455, 458; *Oak Hill Cemetery Co.* v. *Wells, supra,* at page 482.

In construing an act, the court may examine the history of the times on the subject of the legislation, so as to accomplish the purpose of the act. 2 Lewis's Sutherland, Stat. Const. (2d ed.) §471; *State, ex rel.,* v. *Roby, supra,* at page 182; *Stout* v. *Board, etc.* (1886), 107 Ind. 343, 348.

Effect must be given to all the provisions of an act, if such construction is consistent with its general purpose, and the provisions are not so conflicting as to be irreconcilable. If two constructions are possible, that one should be adopted which makes effectual, rather than one which defeats the purpose of the law. *Storms* v. *Stevens* (1885), 104 Ind. 46, 51; *Miller* v. *State, ex rel.* (1886), 106 Ind. 415, 427; *Bernier* v. *Bernier* (1893), 147 U. S. 242, 13 Sup. Ct. 244, 37 L. Ed. 152; *Carpenter* v. *Russell* (1903), 13 Okla. 277, 73 Pac. 930; 2 Lewis's Sutherland, Stat. Const. (2d ed.) §380.

By strict construction it is not intended that the intent shall be defeated, and where, notwithstanding the application of the rule of strict construction, the intention of the legislature is plainly and fairly deducible from the act itself, it will be carried into effect. 2 Lewis's Sutherland, Stat. Const. (2d ed.) §528; *State* v. *Hogreiver* (1899), 152 Ind. 652, 45 L. R. A. 504; *Hankins* v. *People* (1883), 106 Ill. 628.

It is a well-recognized principle, that a general statute, on the same subject as a special act, without apt language showing such intention, will not be held to repeal or modify a former special or local act which is limited in its application. The special or local enactment

remains in force after the passage of the general law on the same subject, unless they are irreconcilably inconsistent, although the general act would, taken strictly and but for the special law, include and control the subject of the special act. 1 Lewis's Sutherland, Stat. Const. (2d ed.) §274; *Monical* v. *Heise* (1912), post, 302; *Miller* v. *Engle* (1906), 3 Cal. App. 325, 330, 85 Pac. 159.

The last section of the special charter of appellant provides that it shall be liberally construed. Such provision in a statute is authoritative, and has the force of law, but as applicable here, does not annul the established rules for the construction of statutes on the subject of taxation and exemptions. 2 Lewis's Sutherland, Stat. Const. (2d ed.) §576; *Snyder* v. *Compton* (1894), 87 Tex. 374, 379, 28 S. W. 1061; *Commonwealth* v. *Curry* (1897), 4 Pa. Super. 356.

If from the language of the special act of 1848 (Local Laws 1848 p. 444), applying the ordinary rules of construction, the purpose of appellant's charter is ascertained to be that of perpetuity of the cemetery and exemption of the company's property from taxation to further the attainment of that end, then the liberal rule of construction provided in the charter must be applied to make effectual that purpose if reasonably possible. In the case of *People, ex rel.*, v. *Board, etc.* (1898), 174 Ill. 177, 51 N. E. 198, in passing upon a similar provision of an act of the legislature, the court said: "We do not think this language was intended to or could be held to change or qualify the general rules of construction applicable to the section under consideration.  *  *  * In determining what purpose is expressed in the section, resort must necessarily be had to the general rules for considering such laws. When that purpose is ascertained, liberal rules of construction, if necessary, are to be resorted to, to give effect to such purpose." See, also, *Chicago, etc., R. Co.* v. *State, ex rel.* (1899), 153 Ind. 134.

Guided by these rules of construction, we are to deter-

mine whether appellant's money, loaned at interest, is, under its charter and the laws of this State, subject to taxation.

It is earnestly contended by appellee's learned counsel that we cannot look beyond the status of the property as money loaned and its immediate use in competition with other money, to determine this question; that its use in such form precludes further inquiry on the subject of the purpose of the charter granted to appellant, and that the provisions of the charter itself, exempting from taxation, must be strictly construed, and when so construed can only apply to the property in the form of real estate or in a fund kept out of the channels of business and held intact to be used exclusively for the purposes specified in the charter.

Appellant contends that the fundamental idea of the charter is perpetuity; that the holding and sale of real estate is only incidental to the accomplishment of the plain purpose of the charter; that it appears from the charter, and from the facts found by the court, that the only means of perpetuating the cemetery is the interest derived from the funds; that the letter and fair interpretation of the charter, and the general policy of our laws relating to taxation, and to cemeteries organized and used exclusively for burial purposes, without any pecuniary benefit to the company or its members, bring the fund of appellant so assessed within the provisions of the law exempting the property of such associations from taxation.

The provisions of appellant's charter must be considered, as well as our general laws on taxation and cemeteries. Cases cited which deal only with exemptions under general laws, while affording some light, are by no means conclusive here, owing to the provisions of the charter.

The policy of our law, to encourage proper care of the places set aside for the burial of the dead, and to exempt from taxation the property of the organizations that accomplish this end, without pecuniary profit to any one connected

therewith, is as firmly established and equally as meritorious as the policy which provides for equal taxation. Within their proper spheres each recognizes a vital principle of our law and civilization, and is entitled to full recognition and enforcement. *Travelers Ins. Co.* v. *Kent, supra; Oak Hill Cemetery Co.* v. *Wells, supra.*

The case at bar is unlike that of *Orr* v. *Baker* (1853), 4 Ind. 86, where a church owning a large lot, upon a part of which the church building stood, and upon another part of which were erected buildings used exclusively for business purposes. Considering the statute and the facts of that case, the holding that the part of the property occupied and used exclusively for business purposes was not exempt from taxation was eminently correct. The same principle governed in the case of *City of Indianapolis* v. *Grand Master, etc.* (1865), 25 Ind. 518.

In *People, ex rel.,* v. *Sayles* (1898), 53 N. Y. Supp. 67, 32 App. Div. 197, the appellate division of the New York supreme court had under consideration a statute providing for the exemption from taxation of the property of certain charitable, educational and benevolent institutions, when used exclusively for carrying out the purposes of such organizations; and further providing that if part of the property was so used, and part was used for other and pecuniary purposes, the part not used to carry out the purposes of the organization was subject to taxation. The court in that case reversed a decision exempting from taxation all the property of the association, including that used for purposes other than carrying out the objects of the organization, and based the decision upon the statute mentioned.

These and similar cases, while closely related to the case at bar, are distinguishable on the facts of each case and the statutes involved. In this case there is no distinct use of any part of the property for business purposes, in the sense that the property was so used in the last mentioned cases. True, the fund is loaned, but without this or some similar

means of deriving revenue, the primary object of the charter, perpetuity of the cemetery, would be defeated, and the inference is irresistible, that from the beginning this use of the funds derived from the sale of the lots was intended to make possible the accomplishment of the object set forth in the special charter. This interpretation is not inconsistent with our general laws on the subject of taxation, and is consistent with the language of the special charter and the declared policy of our law toward cemetery associations operated without pecuniary benefit to their promoters.

In the case of *Travelers Ins. Co.* v. *Kent, supra,* on page 353, our Supreme Court said: "The very objects for which taxes are, in large part, assessed are to carry on the educational and benevolent institutions of the State; and, hence, there is great propriety in avoiding, as the Constitution does, the imposition of any taxation upon those agencies which are themselves employed in the very work to which the State applies so large a part of its revenues."

The following cases throw some light on the question of exemptions from taxation under conditions somewhat similar to those of the case at bar. *People, ex rel.,* v. *Pratt* (1891), 129 N. Y. 68, 29 N. E. 7; *Metairie Cemetery Assn.* v. *Board, etc.* (1885), 37 La. Ann. 32; *First Unitarian Soc.* v. *Town of Hartford* (1895), 66 Conn. 368, 34 Atl. 89; *Proprietors, etc.,* v. *Tripp* (1883), 14 R. I. 199; *Proprietor, etc.,* v. *County Commissioners, etc.* (1890), 152 Mass. 408, 25 N. E. 618, 10 L. R. A. 365; *Town of New Haven* v. *Board, etc.* (1890), 59 Conn. 163, 22 Atl. 156; *People, ex rel.,* v. *Commissioners, etc.* (1875), 6 Hun 109.

The plain reading of appellant's charter, aside from any rules of construction, makes it perfectly clear that the legislature intended to provide for a cemetery to be perpetually maintained by the means provided in the charter. The difficulty in this case is not in determining the purpose, but in making that purpose effectual under §6 of the charter, which, by its terms, exempts the real estate from taxation,

and does not expressly mention money, funds or other property. But by applying the rule expressed in the case of *People, ex rel.,* v. *Board, etc., supra,* we find that the provision for liberal construction is especially applicable to this phase of the question. Under this rule we may consider other provisions of the charter, and other legislation on the subject, both prior and subsequent to 1848.

Clause nine of §5 provides that the trustees shall have power to perform all duties of the association necessary to carry into effect the objects of the company. This is pertinent to the question of loaning the funds, as the court found the interest necessary to the maintenance of the cemetery. The loaning of the funds was a reasonable exercise of the power granted the trustees to carry into effect the objects of the company.

Section eleven provides for the application of the funds derived from the sale of the lots to the improvement of the grounds, payment of incidental expenses, the maintenance and protection of the cemetery, and for the holding in trust of all funds of the company to be used exclusively for the business of the association.

Section seven gives power to convey to persons the exclusive right to bury on any lot or lots so conveyed, subject to the right of management and control of the cemetery by appellant.

These several provisions in a perpetual charter, carefully safeguarding the funds of the company and excluding the idea of pecuniary benefit to anyone, are significant, and indicate both the intent of the legislature and the purpose of the charter to be the establishment and perpetuation of the cemetery by sale of lots and the proper use of the funds so derived. Appellee admits that the funds, while held intact for said purpose and not loaned or used for profit, are not taxable. A construction which is inconsistent with, or tends to defeat, the purpose so plainly manifest should not be adopted if it can be reasonably and legally avoided. To

use the corpus of the fund to carry out the purpose of the organization and to deny the right to use the earnings which may be obtained by loaning the principal sum would be extremely technical and inconsistent, in the face of the provisions of the charter requiring all funds to be held in trust and used exclusively to carry out the purpose of perpetually maintaining the cemetery.

The laws of 1843 (R. S. 1843 p. 208) relative to cemeteries, and the legislation subsequent to 1848 regarding cemeteries so managed as not to yield any pecuniary profit to the owners or managers, do not evidence any intention to change the policy which gave appellant its charter and exempted its property from taxation, but clearly recognizes it, and emphasizes the wisdom of exempting such association from taxation. This is especially shown by the act of 1895 (Acts 1895 p. 18, §4708a Burns 1901) wherein it was provided that where cemeteries had theretofore been incorporated under laws of the State, so as to exclude any pecuniary profit, the property of such corporation should be exempt from taxation so long as used exclusively for cemetery purposes. The act of 1905 especially provides for the setting aside of a maintenance fund exempt from taxation.

Viewing §6 of appellant's charter in the light of the other provisions of the instrument, and the acts of 1843, *supra,* 1852 (1 R. S. 1852 p. 106), 1891 (Acts 1891 p. 199, §6, §10145 Burns 1908), and 1895, *supra,* it becomes apparent that from the beginning the holding of real estate acquired by appellant was only a step in the necessary procedure to the accomplishment of the end in view, and must be considered as an important incident, but not as a final accomplishment of the object of the incorporation. From the inception of the idea of a cemetery properly cared for and perpetually maintained by the company from funds derived from the sale of lots transferred to persons desiring them for burial purposes only, it is apparent that the object contemplated could only be attained by exchanging the real

estate for funds, and that in enacting §6 the legislature used the phrase "all real estate held by said association for burial purposes" in the sense of property, and thereby intended that the property of the company, regardless of the form it should take in carrying out the purpose of the organization, should be exempt from taxation.

In Endlich, Interp. of Stat. §73, it is said: "The words of a statute are to be understood in the sense in which they best harmonize with the subject of the enactment and the object which the legislature has in view."

Again in Endlich, Interp. of Stat. §264, it is said: "The presumption against absurdity in the provision of a legislative enactment is probably a more powerful guide to its construction, than even the presumption against unreason, inconvenience, or injustice."

See, also, 2 Lewis's Sutherland, Stat. Const. (2d ed.) §§347, 363, 364, 368, 370, 374; *In re Parrott* (1880), 1 Fed. 481; *Harbison* v. *Knoxville Iron Co.* (1899), 103 Tenn. 421, 53 S. W. 955, 76 Am. St. 682, 56 L. R. A. 316.

The numerous cases cited by appellee, relating to churches, lodges and other charitable, moral or religious organizations whose property is exempt from taxation when used exclusively for the purposes of the organizations, and taxed when not so used, are not in conflict with our conclusions in this case. Most of these cases are based on the proposition that it is the use to which the funds are placed, and not the ownership that determines whether they are or are not exempt from taxation, and some of them hold that we can only look to the immediate use and not to the ultimate application of the fund or its earnings to determine the question. Upon the proposition that the use is the general test, there is little conflict and the weight of authority supports it; but, upon the latter proposition of only looking to the immediate use (in this case as a fund at interest) in determining the question, there is a conflict of authority, and the better reasoning seems to be on the side of looking both to the im-

mediate use and form of the property and to the ultimate object to be attained. On this question it is difficult to adopt any general rule, as the facts of each case and the particular statutes on the subject must always be considered. We find the test of use of more general application, and in this case the special charter and our general statutes are based upon the idea that the property to be exempt must be used exclusively for the purposes named. *Travelers Ins. Co.* v. *Kent, supra,* at page 353.

The cases relied on by appellee do not have in them the feature of a special charter similar to the one before us, and are based on facts differing from those of this case, and upon general statutes exempting from taxation certain property used for fraternal, moral, educational, religious or burial purposes, when used exclusively for such purposes. If we put into those cases the peculiar features of the case under consideration, growing out of the special charter, the seeming conflict disappears. The test of use applied to this charter, under the facts found by the court, instead of supporting appellee's contention, defeats it.

We hold that the intention of the legislature, as shown by the enactment of appellant's charter, and confirmed by subsequent legislation, was and is to exempt the property of appellant from taxation, regardless of its form or immediate use, so long as the property, or the interest or other earnings derived therefrom, are applied exclusively to the maintenance of the cemetery in accordance with the provisions of the charter.

The judgment is therefore reversed, with instructions to the lower court to restate the conclusions of law on the finding of facts in favor of appellant, and to enter a decree accordingly.