### DETERMINED IN

# THE SUPREME COURT

#### OF THE

## STATE OF UTAH.

*(Continued from Volume 39.)*

SALT LAKE LODGE NO. 85, BENEVOLENT AND
PROTECTIVE ORDER OF ELKS v. J. A. GROES-
BECK, County Treasurer.

No. 2156. Decided December 2, 1911 (120 Pac. 192).

1. TAXATION—EXEMPTIONS—CONSTRUCTION. While statutes exempt-
ing private property from taxation will usually be strictly
construed, those statutes exempting property used for educa-
tional, religious, and charitable purposes should, just as those
providing for poor relief, receive a liberal construction, for
both are based on motives of humanity and mercy, and hence
Const., art. 13, sec. 3, exempting property used exclusively for
charitable purposes from taxation should be liberally construed.[1]
(Page 8.)

2. TAXATION—EXEMPTIONS—CHARITABLE USE OF PROPERTY—EXCLU-
SIVE CHARITABLE PURPOSES. A fraternal order whose object was
good fellowship among its members, to carry out charitable
purposes and conduct a social club for the benefit of the
members, owned a clubhouse to which members only were
admitted. Part of the clubhouse was used as a buffet and
dining room wherein meals, cigars, and drinks were served
to members at customary prices, the net proceeds therefrom
being devoted to charitable purposes, and the rest of the club-
house was used for social purposes. *Held*, that the primary
purpose of the order being charitable and its charities not being

---

[1] Spencer v. Judge, 15 Utah, 242, 48 Pac. 1097; State v. Armstrong,
17 Utah, 171, 53 Pac. 981, 41 L. R. A. 407; Ogden City v. Weber
County, 26 Utah, 129, 72 Pac. 433.

restricted to its own members, the clubhouse was exempt, under Const., art. 13, sec. 3, providing that property used exclusively for charitable purposes shall be exempt from taxation, the use of part of the clubhouse as a buffet and café being only incidental to the charitable purpose of the order.[2] (Page 15.) FRICK, C. J., dissenting.

APPEAL from District Court, Third District; *Hon. M. L. Ritchie,* Judge.

Action by Salt Lake Lodge No. 85, Benevolent and Protective Order of Elks against J. A. Groesbeck, as County Treasurer.

Judgment for defendant. Plaintiff appeals.

REVERSED AND REMANDED WITH DIRECTIONS.

*Powers & Marioneaux* and *M. M. Warner* for appellant.

*Job P. Lyon* and *John J. Jensen* for respondent.

### APPELLANT'S POINTS.

Constitution of Utah, article 13, section 3: "That the property of the United States, of the state, counties, cities, towns, school districts, municipal corporations and public libraries, lots with the buildings thereon used exclusively for either religious worship or charitable purposes, and places of burial not held or used for private or corporate benefit shall be exempt from taxation."

Compiled Laws of Utah, 1907, section 2503: "That the property of the United States, of the state, counties, cities, towns, school districts, and public libraries, lots with the buildings thereon used exclusively for either religious worship or charitable purposes, and places of burial not held or used for private or corporate benefit shall be exempt from taxation."

---

[2] Parker v. Quinn, 23 Utah, 332, 64 Pac. 961, distinguished.

Any organization or institution which discharges in whole or in part a duty which the commonwealth owes to its indigent and helpless citizens by caring for the orphans and the poor who are sick and afflicted, thereby, and to just such an extent, relieves the state of its burdens in that respect, and is a charitable organization or institution, and its property actually used by it, is exempt from taxation. (*City of Indianapolis v. Grand Master, etc., of Grand Lodge of Ind.*, 25 Ind. 518; *Hibernian Benevolent Society v. Kelly*, 28 Ore. 173, 43 Pac. 3, 30 L. R. A. 167; *Commonwealth v. Thomas*, 119 Ky. 208, 83 S. W. 572, 6 L. R. A. [N. S.] 32; *Widows and Orphans' Home v. Commonwealth*, 103 S. W. 354 (Ky.); *Adelphia Lodge v. Crawford*, 57 S. W. 1020 (Mo.); *City of Petersburg v. Petersburg Benevolent Association*, 78 Va. 431; *Fitterer v. Crawford*, 157 Mo. 51, 57 S. W. 532; *Mayor et al. of Savannah v. Solomon's Lodge, etc.*, 53 Ga. 93; *Massenburg et al. v. Grand Lodge F. & A. M.*, 81 Ga. 212; *Appeal Tax Court of Baltimore v. Grand Lodge, A. F. & A. M.*, 50 Md. 421; *Burdine v. Grand Lodge of Alabama*, 37 Ala. 498; *Philadelphia v. Masonic Home of Penn.*, 160 Penn. St. 572, 28 Atl. 954, 23 L. R. A. 545.)

Even the fact that an institution confines the dispensation of its charity to its own members and their families does not deprive it of its character as a charitable institution. (*Portland Hibernian Benevolent Society v. Kelly*, 28 Ore. 173, 43 Pac. 3, 30 L. R. A. 167; *City of Indianapolis v. Grand Master, etc., of Grand Lodge of Ind.*, 25 Ind. 518; *City of Petersburg v. Petersburg Benevolent Association*, 78 Va. 431; *Fitterer v. Crawford*, 157 Mo. 51, 50 L. R. A. 191; *Commonwealth v. Thomas*, 119 Ky. 208, 83 S. W. 572, 6 L. R. A. [N. S.] 32; *Appeal Tax Court of Baltimore v. Grand Lodge A. F. & A. M.*, 50 Md. 429; *Massenburg v. Grand Lodge, etc.*, 81 Ga. 212; *Mayor et al. of Savannah v. Solomon's Lodge, etc.*, 53 Ga. 93; *Curtiss v. Odd Fellows*, 99 Me. 356; *State v. Board of Assessors*, 54 La. Ann. 574; *Mayor, etc., of Baltimore v. Grand Lodge*, 60 Md. 280; *Plattsmouth Lodge v. Cass County*, 113 N. W. [Neb.] 167.

Property which is owned and occupied and used exclusively by a charitable organization; which is not used for general business purposes, and out of which no revenue is derived from third persons; and which is used by the organization for carrying on its charitable work, such use being either direct or indirect, is used exclusively for charitable purposes and is exempt from taxation under section 2503 of the Compiled Laws of Utah 1907. (*Parker v. Quinn*, 23 Utah, 332; *Hibernian Benevolent Society v. Kelly*, 28 Ore. 173, 43 Pac. 3, 30 L. R. A. 518; *Plattsmouth Lodge v. Cass County*, 113 N .W. 167; *Fitterer v. Crawford*, 157 Mo. 51, 50 L. R. A. 191; *First Unitarian Society v. Hartford*, 66 Conn. 368.)

A use of property exclusively for charitable purposes does not preclude its being used for other than strictly charitable purposes, so long as such other use does not exclude nor materially interfere with its use for charitable purposes. (*First Unitarian Society v. Hartford*, 66 Conn. 368; *People v. Feitner*, 168 N. Y. 494; *Curtiss v. Odd Fellows*, 99 Me. 356; *Fitterer v. Crawford*, 157 Mo. 51; *Book Agents of Methodist Episcopal Church South v. Hinton*, 92 Tenn. 188, 19 L. R. A. 289; *Bishop, etc. v. Treasurer of Arapahoe County*, 29 Colo. 143, 68 Pac. 272; *St. Mary's Church v. Tripp*, 14 R. I. 307; *Harvard College v. Assessors of Cambridge*, 55 N. E. 844; *Phillips Academy v. Inhabitants of Andover*, 175 Mass. 118, 55 N. E. 841; *Plattsmouth Lodge v. Cass County*, 113 N. W. 167.)

### RESPONDENT'S POINTS.

It is the use of the property itself and not the use to which the income or profit from the property is put that determines whether or not it shall be exempt from taxation. (*Parker v. Quinn*, 23 Utah, 332; *Cincinnati College v. State*, 19 Ohio, 110; *American Sunday School Union v. Taylor*, 161 Pa. 307; *First Methodist Episcopal Church v. Chicago*, 26 Ill. 482; *Orr v. Baker*, 4 Ind. 86; *Philadelphia Appellant v. Barber*, 160 Pa. 123; *Morris v. Lone Star Chapter No. 6 R. A. Masons*, 68 Tex. 698; *Cleveland Library Assn. v. Pelton*, 3 Ohio St. 259.)

The fact that the business of the Elks is restricted to their own membership, does not entitle the property in question to exemption from taxation. The decisions of the courts are universal in holding that if religious or charitable property is devoted in any manner distinctly to trade, business or secular purposes, the exemption no longer continues. (*Benjamin Pierce v. Inhabitants of Cambridge*, 2 Cushing [Mass.], 611; *Frederick County Commissioners v. Sisters of St. Joseph*, 48 Md. 39; *Hendricks v. Farquhar*, 8 Ohio, 197; *Massenburg et al. v. Grand Lodge*, 81 Ga. 220.)

When an exemption is found to exist, it shall not be enlarged by construction. On the contrary it ought to receive a strict construction. (1 Cooley on Taxation [3d Ed.], p. 357. See, also, *Judge v. Spencer*, 15 Utah, 242; *St. v. Armstrong*, 17 Utah, 171; *Fitterer v. Crawford*, 157 Mo. 51, 50 L. R. A. 191; *Boston Society, etc v. Boston*, 129 Mass. 180; *Hennepin County v. Grace*, 27 Minn. 503; *St. Peters Church v. Scott Co. Commissioners*, 12 Minn. 395.)

McCARTY, J.

Plaintiff brought this action under Comp. Laws Utah 1907, section 2684, to recover from defendant, the treasurer of Salt Lake County, the sum of $621.89, taxes paid by plaintiff under protest on property which it claims was and is exempt from taxation. The cause was submitted to the trial court for decision upon an agreed statement of facts. From the facts stipulated in the record the court found, so far as material here, as follows:

"(1) That the plaintiff was and is a corporation, organized and existing under and by virtue of the laws of the State of Utah, and during all the times herein mentioned was and is the owner of the following described real and personal property: N. 50 ft. of S. 175½ ft. of W. 112 ft. of lot 4, block 74, plat A, Salt Lake City, Salt Lake County, Utah, together with personal property therein, all of the total value of $16,280.

"(2) That the plaintiff is organized as a corporation for the purpose of furthering and carrying on the objects and

purposes fully set forth in the constitution and by-laws of
the incorporated society of Benevolent and Protective Order
of Elks, and the Grand Lodge thereof, to promote good fel-
lowship among its members and for charitable purposes,
and in addition thereto, inaugurate and conduct a social
club for the benefit of the members of said corporation, with
all the rights and privileges incident and necessary to the
furtherance of said objects, including the right to buy, ac-
quire, exchange, sell, hold, and in any manner dispose of,
real property, and to contract indebtedness of every nature
whatsoever; that in accordance with its said purposes, plain-
tiff, during all of the year 1909, up to the date of this
stipulation, has maintained and is now conducting for the
benefit of the members of said lodge, social club rooms, and
maintains on the first floor of the building situated on the
land described in the first paragraph of plaintiff's com-
plaint, a buffet where spirituous, vinous, and malt liquors,
and cigars are sold to its members only, for profit, at about
the same prices paid at the bars and saloons in Salt Lake
City, and that said plaintiff on the second floor of said
building sells for profit to its members only, luncheon and
refreshments, and that upon the second floor of said building,
said plaintiff also maintains a reading room, a room where
billiards are played, and a room where cards are played;
that said plaintiff also occasionally uses its lodge meeting
room on the top floor of said building for dancing and other
social purposes, from which use of its said lodge meeting
room it derives no revenue whatever; that out of the re-
ceipts derived from the sale of liquors, cigars, luncheon
and refreshments to its members, the plaintiff pays the ex-
penses of maintaining the said buffet and restaurant, in-
cluding the expense of bartender, waiters, porters, and the
expense of everything sold and served in the buffet and
restaurant, and all the net receipts thereof go to the plain-
tiff's general fund for charitable purposes; that said plain-
tiff also manages and conducts, every calendar year, an ex-
cursion over the San Pedro, Los Angeles, and Salt Lake Rail-
way to Los Angeles, California, the commissions or pro-

ceeds of which are also turned over to the general fund of the said plaintiff to be used as above stated. That plaintiff dispenses charity in the general relief of the distress of the human family, not only to its members and their families, but also to the public at large.

"(3) That in addition to said sources of revenue, it collects dues from its members to be used for its maintenance and charitable purposes.

"(4) That no part of said property is leased to, or used by any other persons, and is only used and occupied as hereinbefore set forth.

"(5) That no part of the revenues, funds, or property of the plaintiff, except as hereinbefore set forth, is held or used for private or corporate benefit, but that the whole thereof is used exclusively for the maintenance of the plaintiff corporation, and for its charitable work of the relief of distress of its members and their families, as well as those who are not members of the plaintiff corporation.

"(6) That the plaintiff, pursuant to the objects of its incorporation, has expended for charitable purposes in relieving distress during the last five years, including the year 1909, an average annual amount of $1757.79, and has never been assessed for taxation prior to the year 1909.

"(7) That the defendant was and is the duly elected, qualified, and acting county treasurer of Salt Lake County, State of Utah."

The court further found that the taxes assessed and levied against plaintiff's property for the year 1909 amounted to $621.89; that "plaintiff, for the purpose of protecting its rights in the premises on the 12th day of November, 1909, paid to the said defendant under protest said tax, to-wit, the sum of $621.89, . . . and the same was on said day received by said defendant under protest by the plaintiff, and the same has ever since been and now is in the possession of the said defendant as such county treasurer of Salt Lake County, State of Utah." As conclusions of law the court found that the property described in the findings of fact "has not been used exclusively for char-

itable purposes within the meaning of the provisions of
article 13, section 3, of the Constitution of the State of
Utah, and under the provisions of Comp. Laws Utah 1907,
section 2503;" that the taxes assessed against the prop-
erty of the plaintiff are legal and valid, and that "said
property is not exempt from taxation under the Constitu-
tion or the laws of the State of Utah." The court rendered
judgment dismissing the action and for costs of suit. To re-
verse the judgment, plaintiff presents this appeal.

Section 3 of article 13 of the Constitution of Utah, so far
as material here, provides "that the property of the United
States, of the state, counties, cities, towns, school districts,
municipal corporations and public libraries, lots, with the
buildings thereon used exclusively for religious worship or
charitable purposes  .  .  .  shall be exempt from tax-
ation." Section 2503 of the Compiled Laws of Utah
1907, is substantially the same as the foregoing provision
of the Constitution. The only question presented by this
appeal is, Does the property in question come within the
provisions of the Constitution and statute exempting prop-
erty exclusively used for charitable purposes from tax-
ation?

The general rule is that when private property is claimed
to be exempt from taxation the law under which the ex-
emption is claimed will be strictly construed. (*Judge v.
Spencer*, 15 Utah, 242, 48 Pac. 1097; *State v. Armstrong*,
17 Utah, 171, 53 Pac. 981, 41 L. R. A. 407.) There is,
however, an exception to this general rule, and stat-
utes exempting property used for educational and
charitable purposes or for public worship, under the
great weight of authority, should receive a broad and more
liberal construction than those exempting property used with
a view to gain or profit only. The reason for the rule is
that the state, by exempting property used exclusively for
one or more of the purposes mentioned from taxation, is
presumed to receive benefits from the property equivalent
at least to the public revenue that would otherwise be de-
rived from it. And manifestly the purpose of the statute

in exempting property used exclusively for charitable purposes is to encourage the promotion of institutions and organizations having for their object the care and maintenance of the indigent and destitute citizen, the helpless orphan and the poor who are sick and afflicted, and whose charity and ministrations in these respects correspondingly relieves the state of such burdens.

Subdivision 40, section 511, Comp. Laws Utah 1907, provides in part that it is the duty of the county commissioners "to provide for the care and maintenance of the indigent sick and otherwise dependent poor of the county." Subdivision 7 of section 538 provides, so far as material here, that "the necessary expense incurred in the support . . . of the indigent sick and otherwise dependent poor" is a county charge. This court, in construing these provisions of the statute in the case of *Ogden City v. Weber County*, 26 Utah, 129, 72 Pac. 433, said: "The enactment was made in the interests of humanity and mercy, and must receive a liberal construction so as to carry into effect the humane and benevolent policy adopted by the legislature." Precisely the same question—the same principle—that called for a liberal construction of the statute involved in that case demands a liberal construction of the exemption law involved in this case. Both provisions were passed "in the interests of humanity and mercy, and must receive a liberal construction so as to carry into effect the humane and benevolent" purpose for which they were enacted.

The Supreme Court of Tennessee, in construing a statute exempting from taxation "all property belonging to any religious, charitable, scientific, literary, or educational institution and actually used for the purpose for which said institution was created," said:

"The intention of the legislature must govern in ascertaining the extent of tax exemptions; and when the exemption is to religious, scientific, literary, and educational institutions the same strict construction will not be indulged in that would be applied to corporations created and operated for private gain or profit." *State v. Fisk University*, 87 Tenn., 233, 10 S. W. 284.

This doctrine was reaffirmed by the same court in *Book Agents, etc. v. Hinton,* 92 Tenn. 188, 21 S. W. 321, 19 L. R. A. 289. In the case last cited the Tennessee court tersely, and, as we think, correctly, states the reason for the rule as follows:

"The fundamental ground upon which all such exemptions are based is a benefit conferred on the public by such institutions and a consequent relief to some extent, of the burden upon the state to care for and advance the interests of its citizens."

The principle upon which such exemptions are allowed is well illustrated in the case of *Commonwealth, etc. v. Thomas,* 119 Ky. 208, 83 S. W. 572; 26 Ky. Law Rep. 1128, 6 L. R. A. (N. S.), 320, in the following language:

"Without undertaking to be technically accurate a 'purely public charity' may be determined as one which discharges in whole or in part a duty which the commonwealth owes to its indigent and helpless citizens. Undoubtedly it is the duty of the state to educate its poor children, and thus fit them for discharging the duties of citizenship, to care for the indigent insane, its helpless orphans, and its poor who are sick and afflicted; and therefore any institution which serving no selfish interests discharges in whole or in part any such duty is a purely public charity."

In the case of *Widows' & Orphans' Home v. Commonwealth,* 126 Ky. 386, 103 S. W. 354, 31 Ky. Law Rep. 775, 16 L. R. A. (N. S.) 829, the Kentucky Court of Appeals, in construing a somewhat similar constitutional and statutory provision, declined to follow the so-called "rule of strict construction," and expressly overruled one of its former decisions *(Widows' & Orphans' Home of Odd Fellows v. Bosworth, Sheriff,* 112 Ky. 200, 65 S. W. 591, 23 Ky. Law Rep. 1505), in which the same question was involved. And even in the case overruled, the court, referring to the provision of the Constitution exempting "institutions of purely public charity" from taxation, said: "The Constitution is not to be strictly construed, but fairly, and with a view to effectuate its intent." The case cited from 126 Ky., 103 S. W. 31 Ky. Law Rep., *supra,* is also published in 16 L. R. A. (N. S.) 829, and we invite attention to an elaborate

and instructive note in the L. R. A. in which the compiler cites and discusses numerous decisions bearing on the questions here involved.

The case of *Bishop v. Treasurer of Arapahoe County,* 29 Colo. 143, 68 Pac. 272, arose under a statute exempting property "used solely and exclusively for schools," and the court, in the course of a well-considered opinion, says:

"The general rule is that exemptions from taxation are strictly construed, but this rule is not applied with full vigor to the character of exemptions under consideration. In other words, provisions exempting property used for educational purposes are less strictly construed than those exempting property used for ordinary gain or profit."

*St. Paul's Church v. City of Concord,* 75 N. H. 420, 75 Atl. 531, 27 L. R. A. (N. S.) 910, was a case in which the parish house of an Episcopal church was primarily devoted to public worship, but was frequently used for entertainments of a nonreligious character for which pay was sometimes required. It was contended in that case, as it is contended by respondent in this, that the statute exempting such property from taxation should be strictly construed, and the court, among other things, held that the strictest verbal meaning should not be given to the word "exclusive" in construing the statute. In the course of the opinion the court says:

"It is apparent, therefore, that some degree of liberality bounded by reasonableness must be indulged in in determining whether the use made of the parish house for religious purposes has been so far exclusive that it is still a house of public worship, and exempt from taxation as such. A reasonable construction must be given to the statute. Scholastic strictness of definition cannot be adopted if it prevents that result. . . . In other words, it is the duty of the court to ascertain and carry out the intention of the legislature; and that fact is to be found, not by the mechanical or formal application of the words and phrases, but by exercise of reason and judgment. . . . If the socalled 'rule of strict construction,' applied to statutes exempting certain property from taxation, is so strictly applied as to render the exempting language so narrow and restricted as to defeat the apparent legislative purpose, it is clear that too much sacredness is attached to a mere rule, and that it should be either abrogated or applied with more liberality and reason."

The statutes of New York (chapter 371, Laws 1897) provide, among other things, that "the real property of a corporation or association organized exclusively for the moral or mental improvement of men or women, or for religious, Bible, tract, charitable, benevolent, . . . or cemetery purposes . . . and used exclusively for carrying out thereupon one or more of such purposes . . . shall be exempt from taxation." It was held in the case of *People v. Sayles,* 23 Misc. Rep. 1, 50 N. Y. Supp. 8, that a building erected by a voluntary corporation with no capital stock, nor any provision for declaring dividends, and used for libraries, reading rooms, rooms for literary and scientific lectures, etc., and including an auditorium which was rented from time to time as a theater and public hall to persons not members of the association, the rent being applied solely to the maintenance of the building, was, in the meaning of the statute, "used exclusively" for the moral and mental improvement of its members and for educational purposes, and was therefore exempt from taxation. In the course of the opinion the court said:

"While it may, perhaps, be questioned whether the intermittent character of the letting of the theater is a leasing within the purview of the statute, it cannot justly be said that it is either leased or used for purposes other than the carrying out upon the property itself of the design for which the relator is organized; for, as has before been said, the net rental is all devoted to that end, and up to this time the relator's operations have been confined to the building of which the theater is a part. The policy of the exemption is the moral and mental improvement of men or women, the formation and maintenance of religious, benevolent, educational, patriotic, scientific, literary, historical, and burial associations, all of which are aids to and accompaniments of a refined and advanced civilization. This policy is not subverted, but, on the contrary, is promoted by permitting the relator to devote a portion of its premises to a profitable use, when they are not needed and cannot be used by its own members. . . . If the exemption from taxation enables it to obtain a larger net income it is an advantage to which it is fairly entitled, and which is entirely consistent with the policy upon which the exemption is based. Not only is this the recognized rule here, but in other states, cultivating a broad and liberal policy towards the young, the indigent and the infirm" (citing many cases). The court further said that it was "not unmindful that taxation is the rule, an exemption the

exception, and that an intent to exempt property from taxation is not to be presumed; but the true rule is that statutes such as this should be construed, not narrowly by the letter, but liberally and broadly, in view of their object and spirit; and the advantages to be derived from a generous construction will be more than an equivalent to the state and the city of Albany for the loss that may result from the relinquishment of the right of taxation over the property owned by such organizations as the relator, and devoted to kindred purposes. Nor will the state or city suffer by such a construction, as it may safely be assumed that assessors and the courts will scrutinize each case as it arises, and see that a salutary and .benignant law is not perverted to base ends."

In the case of *Phillips Academy v. Andover,* 175 Mass. 118, 55 N. E. 841, 48 L. R. A. 550, the court, in construing a statute similar to the one under consideration, said:

"The statute is not to be construed narrowly, but in a fair and liberal sense, and so as to promote that spirit of learning, charity, and benevolence, which it has always been one of the fundamental objects of the people of this state to encourage."

The Supreme Court of Connecticut, construing a statute (section 3820, Gen. Stat. 1887) of that state which provided, so far as relevant to this case, that "buildings exclusively occupied as colleges or public schoolhouses, or infirmaries; . . . buildings belonging to and used exclusively for scientific, literary, benevolent, or ecclesiastical societies" shall be exempt from taxation, said:

"The policy on which the exemption of church buildings from taxation is granted is the encouragement of religion; and that policy is not hindered, but rather promoted by permitting this building to be used for profit when not needed for those services distinctly called religious services; for literary, scientific, or entertaining exercises, or for any other thing not inappropriate to be had in a church. In earlier times in this state, and in all New England states, the church—commonly called the meeting house—was constantly used for town meetings, lectures, concerts, temperance meetings, political addresses, and for other like special occasions; and no one ever supposed that such use made the meeting house liable to taxation. In view of such general use, it is not to be supposed that the legislature intended, by any language it.has used, to make such church buildings taxable."

*First Unitarian Soc. v. Hartford,* 66 Conn. 368, 34 Atl. 89.

The same court in the case of *Yale University v. New Haven,* 71 Conn. 316, 42 Atl. 87, 43 L. R. A. 490, again gave the statute a liberal and practical construction, and held that "all the dormitories occupied by students, the building used as a dining hall, the observatory buildings, the two houses furnished by the college for the officers of the observatory, the adjoining land found to be reasonably necessary for the purpose of the observatory, and No. 121 Elm Street, used as a college yard in connection with the college buildings are nontaxable property under section 3820." In this discussion of the case the court said:

"The defendant further claims that even if some dormitories may be occupied as a college, yet section 3820 must be construed strictly, because it is a statute exempting property from taxation, and that so construed the finding of the committee requires the court to hold that the dormitories assessed are not in fact buildings erected for the use of students, but in substance constitute an investment in the business of furnishing apartments."

The court, after reviewing the revenue laws from an early period in the history of the state down to the present time, said:

"This clause of section 3820 is not strictly so much an exemption from taxation as the declaration of a public policy well settled and long established; it must therefore be construed reasonably so as to give full effect to the policy declared, as well as to avoid abuse and frustrate evasion."

In conclusion the court said:

"This statute was intended to serve a great public use in pursuance of a most beneficial policy, and the construction to be given such statute requires that the intent shall not be defeated either by clear evasion or undue restriction."

In the following cases a broad liberal construction rather than a narrow and restricted one has been given statutes somewhat similar to our own: *St. Mary's Church v. Tripp,* 14 R. I. 307; *Curtis v. Odd Fellows,* 99 Me. 356, 59 Atl. 518; *Massachusetts Gen'l Hospital v. Inhabitants of Somerville,* 101 Mass. 319; *People ex rel. Church of St. Mary v.*

*Feitner,* 168 N. Y. 494, 61 N.· E. 762; *Academy of the Sacred Heart v. Irey,* 51 Neb. 755, 71 N. W. 752; *Cassiano v. Ursuline Academy,* 64 Tex. 673; *Donohugh's Appeal,* 86 Pa. 306; *Warde v. Manchester,* 56 N. H. 508, 22 Am. Rep. 504; *Trustees of Wesleyan Academy v. Inhabitants of Wilbraham,* 99 Mass. 599.

The admitted facts show, and the court found, that appellant is an organization, the purpose and object of which is "to promote good fellowship among its members and for charitable purposes, and in addition thereto inaugurate and conduct a social club for the benefit of its members." And we think it is apparent that the maintenance of a reading room, a room in which billiards are played, a room where cards· are played, and a lodge meeting room which appellant occasionally uses for dancing and other social purposes, and rooms in which liquors, cigars and refreshments are sold at a profit to members only are the means by which the objects of the organization are attained and its purposes carried out, namely, the promotion of "good fellowship among its members" and the dispensing of "charity in the general relief of the distress of the human family, not only to its members and their families, but also to the public at large." As stated by counsel for appellant in their brief, "to maintain the organization it is necessary to have officers and committees, and to hold meetings, even though all of these may not be immediately concerned in dispensing charity. It must have a permanent meeting place, and in the building used for this purpose it has rooms for accommodating its membership, places where they may meet, not only to talk over lodge business concerned with the dispensation of charity, but for social purposes, to partake of refreshments, or to indulge in a game of cards or billiards. It is all a method of holding the members together, of solidifying the organization, to the end that charitable aims of the organization may be more effectively carried out." That is, the maintenance and occupation of the building and the use made of it as a whole by the organization tends directly to promote and further

the purposes, and to carry out the objects for which the organization was created. And the agreed statement of facts shows that the appellant, during the five years next preceding the year 1909, dispensed for charitable purposes annually the sum of $1757.79, and during the year 1909 the sum of $3757.79. The court found that the sum of $1757.79 only was distributed for charitable purposes during the year 1909. The amount distributed is not, however, of controlling importance in the case. The important question is, Was and is the property, in the meaning of the law, used exclusively for charitable purposes? This question, we think, must be answered in the affirmative. The contention made by respondent that the selling of liquors and cigars, and the furnishing of refreshments to the members of the organization, under the circumstances and conditions as found by the court, deprives the property of the exemption, we think, under the great weight of authority, cannot be maintained. We think it conclusively appears that neither the occupation nor use of the building, or any part of it, was for the purpose of deriving profit or income, and that the benefit derived in the form of gain from the sale of liquors, cigars, and refreshments to the members is a mere incident to the use made of the building in promoting "good fellowship" among the members of the organization and in dispensing charity "in the general relief of the distress of the human family, not only to its members and their families, but also to the public at large."

Suppose, as suggested by counsel for appellant, that the lodge, instead or requiring each member to pay for refreshments, liquors or cigars at the time they are served to him, should raise the amount of the dues each should pay to a sufficient sum to meet these expenses and produce an equal annual net balance for the charitable fund, or that the members should voluntarily contribute sufficient to provide a like result, could there be any doubt that plaintiff would be engaged in a charitable work? It matters not which method is adopted, because in either event the charitable fund would be raised exclusively by the members of the

lodge, and not from any profit derived from the building or any part thereof. The building in question is not open to the public, nor is the public permitted to come there for the purpose of obtaining refreshments, cigars, or liquors, by purchase or otherwise, hence the luncheons and refreshments served and the sales made of liquors and cigars to the members of the lodge or not, as is suggested, brought into competition with restaurants and places of business where liquors and cigars are sold, and which depend upon the patronage of the public for business.

The law is well settled that it is the use to which property, the *res* itself, is devoted, and not the use made of the profits derived therefrom, that determines whether it comes within the statute exempting from taxation property occupied and used exclusively for charitable purposes. Upon this point there is not, nor can there be, any controversy. As we have stated, the important question presented by this appeal, is, Was and is the property in question occupied and used for such purpose? In the discussion of the case the following suggestion is made: "Suppose there should come a year, or series of years, when there are not 'net receipts' or profits arising from" the sale of liquors, cigars, and refreshments, "and hence none to be distributed for charity" from that source, would it be contended that the property in which such sales were conducted was used exclusively for charitable purposes? We are clearly of the opinion that under the agreed statement of facts herein referred to the property, according to the great weight of authority, would be exempt, even though no profits were realized from the sales made of liquors, cigars, and refreshments From the facts stipulated, and as found by the court, it appears that plaintiff "collects dues from its members to be used for its maintenance and charitable purposes;" that it also manages and conducts every calendar year an excursion to Los Angeles, Cal., the commission or proceeds of which are turned into its charitable fund. For aught that appears in the record, the profits derived from the buffet and the serving of luncheon and refreshments may

constitute but an infinitesimal part of the charitable fund. Furthermore, it is a matter of common knowledge that the charity dispensed by fraternal orders and societies and other like charitable institutions does not consist alone of the material assistance, represented by dollars and cents, they give to the orphan, indigent poor, the sick and afflicted who may be in need of help, by furnishing them with food, clothing, shelter, and medical aid, but that they also bestow other kinds of charity which in many cases are just as essential and just as potent in their effect for doing good and in relieving distress as is the material assistance rendered by them. We refer to the charity which is the embodiment of sympathy and kindness; charity which causes

"Me to feel another's woe,

To hide the fault I see,"

—and which comes of the spirit of brotherhood, good fellowship and benevolence generally found to exist in these fraternal orders and societies, and which actuates the members thereof to take an interest in the general welfare of each other, and which by words and acts of kindness and moral suasion guides, cheers, and encourages those who, because of misfortune and trouble, have become discouraged and depressed in spirit, and who are thereby impelled and urged on to renewed effort. The uniting and blending of the two kinds of assistance mentioned, namely, the moral with the material, is charity in its highest and most perfect form.

As suggested, it is a matter of common knowledge that it is the aim of fraternal orders generally to teach, foster, and encourage this kind of charity as one of their cardinal principles. And it appears from the facts stipulated in the record that plaintiff is no exception to the general rule. The only difference between plaintiff and other fraternal orders in this respect is, that in most, if not all, of the other societies of this kind, the charity dispensed by way of material assistance is confined to the members of such orders and their families, whereas, plaintiff, as found by the court, "dispenses charity . . . not only to its members and

their families, but also to the public at large." Therefore the question of whether plaintiff realizes a profit from the sales of liquors, cigars, and refreshments is not of controlling importance. The question of profits became a factor in the case because of the claim made by respondent that the property is not occupied and used exclusively for charitable purposes, but that the part on which the sales mentioned are conducted is used for business purposes, and hence does not come within the provisions of the statute under consideration. In answer to this claim plaintiff contends that as the use thus made of the property is a part of the general scheme or plan for carrying into effect the purposes of the lodge "to promote good fellowship among its members and for charitable purposes," and not for the purpose of gain or profit, it is, within the meaning of the law, "used exclusively" for charitable purposes. And it is pointed out that the profits incidentally derived from the uses made of the property go into the charitable fund.

The statutes of Massachusetts, among other things, provide that "the personal property of literary, benevolent, charitable, and scientific institutions, incorporated within this commonwealth, and the real estate belonging to such institutions occupied by them or their officers for the purposes for which they were incorporated" shall be exempt from taxation. In the case of *Phillips Academy v. Andover, supra,* the court, in distinguishing between occupancy of property for private gain or profit and an occupancy as contemplated by the statute says:

"The distinction lies, it seems to us, between an occupancy which is for private benefit and convenience of the officers, and which is so regarded by the parties, as in the ordinary case of landlord and tenant, and an occupancy where, although necessarily to some extent the relation of landlord and tenant enters into it, the dominant and principal matter of consideration is the effect of the occupancy (*use* in case at bar) in promoting the objects of the institution in the various ways in which such occupancy may or will tend to promote them. In the former case the property would not be exempt, in the latter it would; and the fact that the institution incidentally derived some pecuniary advantage from the occupancy would not deprive the property of the exemption to which it otherwise would be entitled."

This doctrine is reaffirmed by the same court in a later case (*Emerson v. Trustees of Milton Academy*, 185 Mass. 414, 70 N. E. 442), in the following language:

"It is that the purposes mentioned in the statute refer to the direct and immediate result of the occupation of the property, and not to the consequential benefit to be derived from the use of it. An occupation and use of real estate to produce income to be expended for the purposes for' which the institution was incorporated is not within the statute, while an occupation whose dominant purpose is directly to accomplish some one of the objects for which the corporation was established is within it. If incidentally these are results of the use which would not entitle the property to exemption, that is immaterial so long as the dominant purpose of the occupation is within the statute."

In the case of *New England Sanitarium v. Stoneham*, 205 Mass. 335, 91 N. E. 385, the court says:

"The increase of charitable funds through receipts from patients or inmates who are able to pay wholly or partially for benefits received, does not change a home for aged people, or hospital, organized and conducted as a charity, into a private association, maintained for the pecuniary advantage of the promoters. The original eleemosynary character of the institution is not transformed by the patronage, even if sufficient to relieve. it from financial burdens, but the charity established remains unaffected (citing cases). . . . The petitioners' statutory rights are not to be ascertained by an apportionment of the classes who may have been benefited, so that if the number of paying patients preponderates, the exemption fails. The dominant purpose for the promotion of which the institution was organized and has been maintained furnishes the test whether it is a business organization conducted for commercial gain with incidental acts of benevolence and philanthropy."

The statutes of Illinois (Hurd's Rev. St. 1905, c. 120, section 2, subd. 7) provide that "all property of institutions of public charity, when *actually and exclusively used* for such charitable purposes not leased or otherwise used with a view to profit" shall be exempt from taxation. (Italics ours.) In the case of *Sisters of St. Francis v. Board of Review*, 231 Ill. 317, 83 N. E. 272, it is held that the fact that the percentage of charity patients treated by a hospital is small compared with those who pay for treatment does not affect the character of the hospital as a public charity. In the course of the opinion the court said:

"Where an institution devoted to beneficence of that character is, under the law, exempt from taxation, it does not lose its immunity by reason of the fact that those patients received by it who are able to pay are required to do so, or by reason of the fact that it receives contributions from outside sources, so long as all the money received by it is devoted to the general purpose of charity, and no portion of the money received by it is permitted to inure to the benefit of any private individual engaged in managing the charity."

It would be a work of supererogation on our part to cite the many cases holding to this doctrine.

Respondent, in support of his contention that the property in question is not, in the meaning of the law, used exclusively for charitable purposes, cites the case of *Parker v. Quinn,* 23 Utah, 332, 64 Pac. 961. In that case the Fifteenth Ward Relief Society, a charitable organization, owned a two-story brick building, the upper story of which was used continuously by the society for the holding of meetings and the performance of work by its members in furtherance of its charitable purposes. The lower floor of the building contained two storerooms, one of which was rented for $12.50 per month and the other, at the time the case was tried, was offered for rent. The rental received was used for charitable purposes. The plaintiff claimed that the property, including the two rooms which were held merely as a source of revenue the use of which had nothing to do with the charitable work of the society, was exempt from taxation. The court held, and properly so, that the portion of the building which was not used by the organization for its own purposes, but was kept as an investment for business purposes, was not exempt from taxation. In the course of the opinion it is said:

"Only such of the society's property, therefore, as is occupied and used 'exclusively' for charitable purposes is exempt from taxation. It follows that the exemption does not extend to that portion not appropriated by the society to its own use, but held as a source of revenue. . . . Where, therefore, as in this case, a portion of certain property owned by a charitable institution is occupied and used by it for charitable purposes, and the other portion thereof is devoted to purposes of revenue, the portion used and occupied for charitable purposes is exempt, and the portion not so used and occupied is subject to taxation."

The following cases cited by respondent are to the same effect: *Hibernian Benev. So. v. Kelly,* 28 Ore. 173, 42 Pac. 3, 30 L. R. A. 167, 52 Am. St. Rep. 769; *Fitterer v. Crawford,* 157 Mo. 51, 57 S. W. 532, 50 L. R. A. 191; *Massenburg et al. v. Gd. Lodge F. & A. M.,* 81 Ga. 212, 7 S. E. 636; *College v. State,* 19 Ohio, 110; *Appeal Tax Court of Baltimore v. Gd. Lodge A. F. & A. M.,* 50 Md. 421; *First Methodist Episcopal Church, etc. v. City of Chicago,* 26 Ill. 482; *Orr v. Baker,* 4 Ind. 86; *Philadelphia, Appellant, v. Barber,* 160 Pa. 123, 28 Atl. 644; *Morris v. Lone Star Chap No. 6 R. A. Masons,* 68 Tex. 698, 5 S. W. 519.

The facts in this case, as stipulated by the parties, do not bring it within the rule as declared by these decisions. No part of the building in question is or was leased to third parties nor was it otherwise used for business purposes. Nor can the sale of liquors, cigars, and luncheons carried on therein as found by the court be regarded a general business. All that can be claimed, as against appellant's contentions, for these sales is that they are merely incidentals to the use made of the building for charitable purposes. They are made to members only, and do not exclude or materially interfere with the use made of the building for charitable purposes. If we, in construing the constitutional and statutory provisions under consideration, should give to the word "exclusive" the strict technical verbal meaning contended for by respondent, practically every private hospital, and, with but a very few exceptions, every church building erected and used for religious worship within this state would be subject to taxation, because it is a matter of common knowledge that in many, if not in the majority of cases, the patients who go to or are sent to private hospitals for medical treatment are required to pay for the nursing and care they receive, and are not recipients of charity as the term is usually used and understood; and it is equally well known that it is not an uncommon thing for church buildings which are erected and are used for religious worship to be used for social entertainments, the giving of lectures, and for other like purposes, secular in character, for which, in many cases, admission fees

are charged. It is a matter of common knowledge that there are throughout the state church buildings which are more frequently used for the giving of lectures, concerts, organ recitals, and for holding meetings of a secular nature, 'to some of which admission fees are charged, than for religious worship. The various secular uses made of these buildings being merely incidental to the main or paramount purpose for which they were erected and are maintained, and which in no way interfere with the use made of them for religious worship, we do not think it can be seriously contended that the buildings are not, within the meaning of the law, "used exclusively" for religious worship. Therefore, in this state, buildings used for religious worship and those used for charitable purposes, generally speaking, are not used for those purposes to the absolute exclusion of all other uses. Nor do we think that it was the intention of the framers of the Constitution that they should be so used in order to entitle them to the benefit of the exemption. So long as the incidental uses made of such buildings do not exclude or interfere with their use for religious worship, or for charitable purposes, as the case may be, then such incidental uses do not deprive the property of the benefit of the exemption. To hold otherwise would, in effect, annul the provision of the Constitution and statute under consideration by defeating the very purposes for which it was adopted.

It is conceded that " the great weight of authority is to the effect that as a lodge appellant is a charitable institution." This ought to end the inquiry provided this case is to be ruled and decided in accordance with the weight of authority, because, as we have pointed out, the serving of luncheons and refreshments, the dispensing of liquors and cigars to the members, and the playing of cards and billiards are evidently a part of the social feature of the lodge. But it is suggested that there is no "particular charitable use or purpose to which the building in question is devoted except that the third floor is used for a lodge—that is, on the floor the members hold their lodge meetings." It is, however, further suggested that "if the entire building were used for lodge meetings or

lodge purposes it might well be held to be exempt from taxation." But it is claimed that because plaintiff maintains a buffet and furnishes to its members only cigars and liquors "at about the same prices paid at the bars and saloons in Salt Lake City," it is therefore engaged in the business of running a saloon, and because it furnishes its members luncheon and refreshments at a profit it is also keping a restaurant, and hence the property in question is not, within the meaning of the law, used exclusively for charitable purposes.

In answer to the suggestion that the property in question is devoted to and used for maintaining and carrying on a saloon business rather than for charitable purposes, it is sufficient to say that the floor on which the cigars and liquors are sold at a profit to the members is occupied and used by a social club, an arm, if not one of the main pillars of the lodge, and not as a saloon as the term "saloon" is generally used and understood. It is a matter of common knowledge that nearly if not all of the drug stores in this city, in a limited way, deal in intoxicating liquors; that is, they do what is termed a "bottle business." It is generally, if not universally, known that the Commercial Club of this city, which has rendered and is rendering services of incalculable value to the business interests as well as to the people generally of this state, maintains a buffet where cigars and liquors are sold to its members only. And it is equally well known that a number of other clubs in this city and elsewhere in the state keep a buffet where liquors are sold to the members thereof. According to the claim here made, nearly if not all of the drug stores in this city are saloons, and to call them anything else is to "make a distinction where there is no difference," and every member of the clubs mentioned is indirectly, if not directly, engaged in the saloon business, and to hold otherwise would also be making "a distinction where there is no difference." And if the hospitals in this state that are recognized as charitable institutions should keep intoxicating liquor on hand for the use of their patients only and sell the same at a profit to those who might require it and are able to pay for it, under the contention here made, those hospitals

would no longer be charitable institutions but saloons, and hence would be subject to taxation.

The question of whether a social club or fraternal order that maintains in connection with its club or lodge room a buffet as one of the social features of the club or order as the case may be, and as a part of the general scheme or plan of carrying out the purpose of the club or order, and in such buffet sells at a profit to its members liquors and cigars, the profit derived being a mere incident and not the purpose for which the buffet is maintained, is, in a technical sense, engaged in the saloon business, is not of vital importance, and our only reason for devoting so much time and space to this phase of the controversy is that it is broadly asserted that plaintiff is engaged in the business of running a saloon, and that it therefore necessarily follows that the property in question cannot in any sense be devoted to charitable purposes. We are therefore impelled to point out that plaintiff is not engaged in the saloon business in the sense in which the term is usually understood and applied. The statutes of this state make a distinction between a saloon and a club which dispenses intoxicating liquors and cigars, and this court is bound to recognize such distinction provided it is material to the questions involved.

The cause is reversed, with directions to the trial court to set aside its findings of fact and conclusions of law so far as they are at variance with the views herein expressed, and the judgment rendered thereon, and to make findings of fact and conclusions of law and to render judgment for the plaintiff in accordance with the prayer of the complaint. Appellant to recover costs.

STRAUP, J. (concurring).

What chiefly divides us is the question of whether the Constitution and the statute under consideration shall receive a strict or a liberal construction. If a literal and restricted meaning is to be given the words, "used exclusively for charitable purposes," and a conclusion reached that any use made of the building which in itself is not strictly nor neces-

sarily for a charitable purpose, or which may be a mere incident thereto, though such use is not inconsistent, nor at variance, with the dominant or general use for which the building is occupied and used by the organization for charitable purposes, then it may be that a portion of the building, under the stipulated facts, might be subject to taxation. Giving the words such a meaning would also render a church subject to taxation in which lectures, concerts, entertainments, etc., are held for profit, for, strictly speaking, the use of the church for such purposes would not, literally, be using it "exclusively for religious worship," especially if the lecture or concert, etc., related only to mere secular, political, or worldly subjects. My Associate, Mr. Justice McCarty, has shown, and has supported his position by good authority, that statutes exempting from taxation property used for educational, charitable, and religious purposes, should receive a broad and liberal construction. I fully agree with such a holding. That of course does not mean that a court is authorized to place a construction on the statute which is not justified by the language of the statute, but to so construe it as to give effect to the legislative intent and to carry out the obvious purpose of the statute. And as courts have often said that intent frequently cannot be ascertained, nor the purpose carried out, by adopting mere "scholastic strictness of definitions" or by making a mere "mechanical or formal application of words and phrases" employed in the statute, but only by giving the statute a fair and reasonable construction in view of its object and purpose. To so construe the words and phrases here in question as would render a church, or property of a charitable organization, subject to taxation, which is owned and used by a religious or charitable organization, for religious worship, or charitable work, if some use is made of the property by the organization which is not strictly, nor necessarily, for a religious or charitable purpose, or which may be a mere incident thereto, and which does not interfere, or is not at variance, with the general, or dominant, or controlling use for which the property is occupied, used, and maintained by the organization itself for a religious or char-

itable purpose, would, I think, be giving a meaning to the Constitution and the statute not intended by the lawmaking body. And to that effect, I think, are the authorities generally, as is shown by the cited cases of both of my associates. This is not a case where the property, or a portion of it, was leased to another for a commercial or business purpose, or where the organization itself used it for such a purpose. The plaintiff admittedly is a charitable organization. There is no dispute about that. It exclusively owned, occupied, and used the property in question. No part of the property was occupied or used by any one else. Confessedly, the organization itself occupied and used the property in carrying out, and in furtherance of, the charitable objects and purposes contemplated in its creation, and as evidenced by its constitution and by-laws. Now what use did it make of the property which interfered, or was at variance, with that dominant and controlling use for which it occupied, used and maintained the property, or which was inconsistent with an exclusive use by it for charitable purposes? It permitted its members to eat and drink something in the building. I think it immaterial what they ate, or whether they ate cooked or uncooked food. I think it also immaterial what they drank—whether mild or strong drinks. It may not be the most moral thing for them to drink, or to dispense to each other, intoxicating drinks, but we cannot punish them by taxing their property because it should be thought that they have not properly behaved themselves. We have police courts for that. But it is said that they paid the organization a fair retail market price for what they there ate and drank, and that instead of the members helping themselves to the refreshments, they had attendants to wait on and serve them. What of that, unless from such facts the conclusion is to be drawn that the plaintiff, under the guise of a charitable organization, was engaged in a general or restricted restaurant or saloon business for commercial purposes, or carried on such a business for such a purpose in connection with, or independently of, its general charitable work. But the admitted averments of the complaint and the stipulated facts negative any such a conclusion.

The fact that the members paid the organization, whether
much or little, for what they there ate or drank is not de-
terminative of the question of whether the refreshments were
supplied and furnished by the organization for a commercial
or business purpose, in the sense of a restricted restaurant or
saloon business, or whether they were supplied for eleemosy-
nary purposes, or as a mere incident thereto. That question
is largely determined from the fact as to whether the sales of
the refreshments were carried on and were intended for com-
mercial purposes, and the proceeds and profits so derived
therefrom applied to that purpose, or whether they were in-
tended for, and were wholly devoted, not to charity or to some
charitable purpose, but to the charitable purposes contem-
plated in the creation of the organization, as evidenced by its
constitution and by-laws. I think the only permissible in-
ference from the admitted and stipulated facts is that the
refreshments were not furnished or supplied by the organiza-
tion for any commercial or business purpose, or that the pro-
ceeds or profits derived therefrom were intended for, or were
applied to, such a purpose, but that they were furnished and
supplied only for the mere comfort and pleasure of its mem-
bers, and that whatever proceeds or profits drived from such a
source were intended for, and were wholly devoted to, the
charitable purposes of the organization contemplated in its
creation. To say that the furnishing of the refreshments by
the organization under such circumstances and for such a pur-
pose. must be regarded as a transaction carried on for a busi-
ness or commercial purpose, although not a dollar derived
from such a source was intended for, nor applied to, such a
purpose, is to say that rummage sales, festivals, luncheons,
suppers, etc., had and conducted in a church by a religious
organization, and the proceeds and profits derived therefrom
wholly devoted to the religious work contemplated in the crea-
tion of the religious organization, must also be regarded as
transactions for business or commercial purposes. But it is
said churches only occasionally do these things, while here,
the furnishing of the refreshments by the plaintiff was a daily
occurrence. That is only material in determining the pur-

pose or intent for which they were done. If they were carried on, not for any commercial or business purpose, and if the proceeds were not intended for and were not devoted or applied to such a purpose, but were intended for and were wholly devoted to the religious or charitable work contemplated in the creation of the organization, then it is immaterial whether these things were done once a month, once a week, or every day. So, too, it is said the furnishing of the refreshments, as shown by the stipulated facts, is not necessary in carrying out the charitable work of the plaintiff, and that the members of the organization can eat and drink at home or elsewhere. That is not the point; or at least not a determinative or an essential feature. As well say rummage sales, or festivals, are not necessary to the salvation of souls. But they help to pay the salaries of ministers and choirs, and other necessary expenses, as here, the profits derived from the sales of the refreshments help to defray the plaintiff's expenses, and to increase its general charitable fund, to which the whole of the net profits derived from such a source are devoted.

I therefore fully concur with Mr. Justice McCARTY, in the reversal of the judgment.

FRICK, C. J. (dissenting).

I dissent, and in doing so I am fully aware of the fact that a dissenting opinion for every practical purpose, is stillborn, and, as a general rule, performs no office except to vindicate the personal views of the writer and incidentally to console the attorney of the losing party. In view of these self-evident facts, and because the judgment of the majority of the court must prevail, I have always felt it my duty to defer to the judgment of my associates, and shall continue to do so whenever in my judgment such a course is possible without doing violence to what I consider fundamental principles. In this case my judgment is wholly at variance with the conclusions reached by my associates, and in view that their conclusions, in my judgment, are irreconcilable with the underlying principles which control in determining whether prop-

erty, under our constitutional provision, is exempt from the
burden of taxation or not, I shall, as briefly as possible, state
my reasons for my dissent.

From the facts as they are stated in the prevailing opinion
it will be observed that the appellant is a corporation, and as
such constitutes what is commonly called a lodge of varying
membership. Among other "objects and purposes," the ap-
pellant, as an organization, is created "to promote good fel-
lowship among its members and for charitable purposes, and
in addition thereto inaugurate and conduct a social club for
the benefit of the members of said corporation; with all the
rights and privileges incident and necessary to the further-
ance of said objects, including the right to buy, acquire, ex-
change, sell, hold, and in any manner dispose of real prop-
erty, and to contract indebtedness of every nature whatever."
The findings proceed to state what a portion of appellant's
property is used for. In this connection it is found that ap-
pellant "during all of the year 1909 . . . has main-
tained, and is now conducting for the benefit of the members
of said lodge, social club rooms, and maintains on the first
floor of the building situated on the land described . . .
a buffet where spirituous, vinous, and malt liquors and cigars
are sold to its members only for profit at about the same
prices paid at the bars and saloons in Salt Lake City, and
that said plaintiff on the second floor of said building sells
for profit to its members only luncheon and refreshments, and
that upon the second floor of said building said plaintiff also
maintains a reading room, a room where billiards are played,
and a room where cards are played; . . . that out of the
receipts derived from the sale of liquor, cigars, luncheon and
refreshments to its members the plaintiff pays the expenses of
maintaining the said buffet and restaurant including all ex-
penses of bartenders, waiters, porters, and the expenses of
everything sold and served in the buffet and restaurant and
all the net receipts thereof go to the plaintiff's general fund
for charitable purposes." Then the findings proceed to set
forth that "no part of the revenue, funds, or property of the
plaintiff, except as hereinbefore set forth, is held or used for

profit or corporate benefit, but the whole thereof is used exclusively for the maintenance of the plaintiff corporation, and for its charitable work of the relief of the distress of its members and their families, as well as those who are not members of the plaintiff corporation." Then follows a statement that the appellant has expended for charitable purposes for the last five years "an average annual amount of $1,757.79."

Upon substantially the foregoing facts the claim for exemption is based. Can this claim be sustained in view of the Constitution of this state, which, so far as material, provides that "lands with the buildings thereon *used exclusively* for either religious worship or *charitable purposes . . .* shall be exempt from taxation?" (Italics mine.) My associates, after giving the question their careful consideration, have arrived at the conclusion that the lot and building thereon owned by appellant are "used exclusively for charitable purposes." In my judgment such a conclusion not only is contrary to the letter of the constitutional provision just quoted, but is a complete departure from its spirit and purpose. In the prevailing opinion it is apparently held that the use to which property is devoted is immaterial so long as the proceeds, or rather, the profits, derived therefrom are used for some purpose which may be classed as charity. As I view it, the Constitution, in plain and unmistakable terms, says that it is the use of the property that controls, and, further, that such use must be exclusively for charitable purposes. This is the crucial question in this case and marks the point of divergence between my brethren and myself.

That the meaning and intent of constitutional provisions like ours is to the effect that in order to hold property exempt from taxation it must be directly and exclusively used for charitable purposes, the courts which have passed upon the question, including this court, leave little if any room for doubt. This court, in the case of *Parker v. Quinn,* in referring to this subject in 23 Utah at page 338, 64 Pac. at page 962, says:

"If, therefore, in the fundamental law, in addition to specifying lots and buildings thereon used 'exclusively' for charitable purposes, rentals derived from such buildings and used for such purposes were also enumerated, we would have no difficulty in this case in declaring the whole property, including the portion rented and held for rent, exempted from taxation, but the lawmakers did not see fit to exempt such rentals, in express terms, and we can furnish no aid by construction. Only such of the society's property, therefore, as is occupied and used 'exclusively' for charitable purposes is exempt from taxation."

The foregoing rule is the one that is adopted and enforced under a great variety of facts and circumstances in the following well-considered cases: *Lacy v. Davis,* 112 Iowa, 106, 83 N. W. 784; *Cincinnati College v. State,* 19 Ohio, 110; *Sunday School Union v. City of Phila.,* 161 Pa. 307, 29 Atl. 26; *First M. E. Church v. Chicago,* 26 Ill. 482; *Philadelphia v. Barber,* 160 Pa. 123, 28 Atl. 644; *Morris v. Masons,* 68 Tex. 698, 5 S. W. 519; *County Com'rs, etc., v. Sisters of Charity,* 48 Md. 34; *Massenburg v. Grand Lodge, etc.,* 81 Ga. 212, 7 S. E. 636; *Hibernian, etc., Soc. v. Kelley,* 28 Ore. 173-193, 42 Pac. 3, 30 L. R. A. 167, 52 Am. St. Rep. 769; *Fitterer v. Crawford,* 157 Mo. 51, 57 S. W. 532, 50 L. R. A. 191; *St. Mary's College v. Crowl,* 10 Kan., star page 442; *Plattsmouth Lodge, etc., v. Cass Co.,* 79 Neb. 463, 113 N. W. 167; *Y. M. C. A. of Omaha v. Douglas Co.,* 60 Neb. 642, 83 N. W. 924, 52 L. R. A. 123; *Library Ass'n v. Pelton,* 36 Ohio St. 253; *Adelphia Lodge v. Crawford,* 157 Mo. 356, 57 S. W. 1020; *Stahl v. Educational Ass'n,* 54 Kan. 542-547, 38 Pac. 796; *Gerke, etc., v. Purcell,* 25 Ohio St. 229; *People v. Collison* (Sup.), 6 N. Y. Supp. 711; *Salem Lyceum v. City of Salem,* 154 Mass. 15, 27 N. E. 672; *City of Indianapolis v. Grand Master, etc.,* 25 Ind. 518; *Ft. Des Moines Lodge, etc., v. County of Polk,* 56 Iowa, 34, 8 N. W. 687.

The case of *Lacy v. Davis, supra,* is a recent case decided by the Supreme Court of Iowa in which the principle I contend for is illustrated and applied. The property in question in that case was owned by a charitable association, but in the opinion of the Supreme Court of Iowa it was not exclusively

or directly used or applied for charitable purposes for the following reasons: The association, known as "Knights Templars," a branch of the Masonic order, acquired considerable real property at or near a summer resort. Upon this property the order had erected some buildings suitable for holding the annual meetings of the grand body. In connection with these buildings there were also erected smaller ones which were suitable for and were used by the members who attended the grand body as sleeping apartments and for kitchen and eating purposes. Those who used the buildings or rooms for the purposes aforesaid paid the order which owned the building a nominal rent for the use therof. These buildings were claimed by the order as exempt from the burden of taxation because owned by a charitable institution and because they were not used for profit. The Supreme Court of Iowa, however, held that property which is used for the ordinary purpose of affording members of a charitable order or lodge convenient places to eat, drink and sleep, whether for recreation or otherwise, is not exclusively devoted to charitable purposes. In *Massenberg v. Grand Lodge, supra,* Mr. Justice Bleckley, 81 Ga. at page 218, 7 S. E. at page 638, states the rule tersely in the following language:

"It is no more allowable, under the Constitution, for a charitable association to accumulate money by the use of exempt property to be disbursed in charity than it is for a common citizen to do it."

In commenting further upon charity, further on in the opinion, it is said:

"The acquiring of money by the use of property or capital is not the appropriate office of a charitable agency, but rather to apply and administer that which has been accumulated through its own bounty or the bounty of others. It is not an instrumentality for gathering together, but for scattering abroad. When charity has a business side, let it conduct business as the world generally, on business principles, the first rule of which is to provide for taxes the highest claim on every species of property used in the common avocations of life."

In the case of *Sunday School Union v. City of Phila., supra,* the Supreme Court of Pennsylvania says:

40 Utah—3

"Conceding the fact that the society is an 'institution of purely public charity,' and as such exempt from taxation, it seems to us, such an institution may, as an aid to the accomplishment of its primary object, carry on a business, or use part of its property for a business purpose, which renders such business or such part of its property taxable. . . . Nor does the fact that the profits gathered on the counter of the bookstore are devoted to the primary object of the charity, which is purely public, in any degree affect the character of the trading or commercial enterprise. Every dollar the society expends is some charitable contributor's gains or profits from some business not charitable."

In *Stahl v. Educational Ass'n, supra,* Chief Justice Horton, in speaking for the Supreme Court of Kansas upon the question of whether an educational institution may use its property for business purposes, and claim it as exempt from taxation upon the ground that the profits derived therefrom are used for educational purposes, says: "If the association might do that, it could go further, and operate a bank, or any other enterprise."

It is, however, unnecessary, and, in view of the conclusions reached by the majority of this court, entirely unprofitable for me to quote further from the decided cases. I have copied the foregoing excerpts from the cases merely to show that it is the direct and exclusive use of the property for charitable purposes and not the use of the profits, net or gross, that are derived therefrom for charitable purposes that brings the property within the exempt character contemplated by the Constitution.

Let us pause a moment to inquire whether the two lower stories of appellant's three story building are exclusively used for charitable purposes. In that part of the statement or findings of facts where the purposes of appellant as a corporation are set forth, it is not even claimed that the two lower floors of the building are, or ever have been, used exclusively or at all for charitable purposes, or that the use they are devoted to was originally contemplated as coming within the charitable purposes for which appellant was primarily organized. In the findings of facts, after referring to the fact that the appellant is organized to effectuate the purposes "fully

set forth in the constitution and by-laws of the incorporated society of the Benevolent and Protective Order of Elks, and the grand lodge thereof," and which order the court has found is a charitable institution, it is said "and in addition thereto, inaugurate and conduct a social club for the benefit of the members of said corporation." What is meant by this language? It can mean but one thing, which is that, in addition to the charitable purposes which are supposed to be "fully set forth in the constitution and by-laws" of the order aforesaid, the appellant, as a corporation, will add to the charitable purposes specified in said constitution and by-laws the features of a social club for the benefit of the members of the organization. These features, or, at least, a portion of them, consist of what is called the maintenance of "club rooms" and a "buffet" on the first floor of the building. This so-called buffet is no more nor less than a saloon in which all kinds of liquors are sold to the members "for profit at about the same prices paid at the bars and saloons in Salt Lake City." It is suggested, however, that the buffet cannot really be classed as a saloon. If we examine the statement of facts, however, or the so-called findings of fact, we see that this buffet is manned by "bartenders, waiters, and porters." Is it not pertinent to ask where are bartenders and porters usually found except in saloons? It is also suggested that a saloon is a place where the public may enter and partake of liquid refreshments. It, however, is not necessary that a saloon be open to all in order to constitute it such. It would seem that in view that "out of the receipts derived from the sale of liquors, cigars, luncheon, and refreshments to its members the plaintiff pays the expenses of maintaining the said buffet and restaurant, including the expense of bartenders, waiters, porters, and the expense of everything sold and served in the buffet and restaurant, and all the net receipts thereof go to the plaintiff's general fund for charitable purposes," that the buffet must be pretty well patronized by a considerable number of members. Under such circumstances the name "buffet" is used only for the purpose of avoiding the common name of saloon. For this, and other reasons, I am not

only justified in calling the buffet a saloon, but if I did not
do so I should make a distinction where there is no difference.
The second story of the building is used for a "restaurant,"
and also for billiard, card, and reading rooms for the use and
benefit of the members only.   I confess that I am entirely
unable to yield assent to the proposition that property which
is used for the purpose of selling "spirituous, vinous, and
malt liquors and cigars" is "used exclusively . . . for
charitable purposes," although the sales are limited to a cer-
tain class of individuals who are members of a particular in-
stitution.   By what course of reasoning can any one arrive
at the conclusion that the traffic in intoxicating liquors,
whether limited or unlimited in quantity, and to the persons
to whom it is sold, is a charitable occupation or enterprise?
Even though it were permissible to hold that carrying on a
saloon and restaurant for the benefit of a special class of per-
sons is a charitable enterprise, yet in view that it is conceded
in this case that only the "net receipts"—that is, the profits—
derived from said enterprise are used for charitable purposes,
it necessarily follows that the property itself is not used ex-
clusively for charitable purposes.   That such is the case is
easily demonstrable.   Suppose there should come a year, or a
series of years, when there are not "net receipts" or profits
arising from the saloon and restaurant business and hence
none to be distributed for charity, would any lawyer still con-
tend that the property on which the saloon and restaurant
were conducted was "used exclusively" for charitable pur-
poses?   If such a contention were made, would it be sus-
tained by any court?   In this case the only claim is, that the
proceeds derived from the saloon and restaurant business are
used for charitable purposes.   We may, therefore, disguise it
as we may, the fact still remains that it is not the property,
as such, that is used for charity, but it is the proceeds de-
rived therefrom, if there are any, that are so used.   The prop-
erty, as such, is, therefore, not used for charity at all, but it
is only the proceeds if there are any that are so used.   This
court, in common with many others, has, however, established
the rule that it is the direct use of the property itself that

determines its exempt character. From this rule it follows that unless it may be said that the property itself is used exclusively for charitable purposes regardless of any profits that may be derived therefrom, the use is not exclusively charitable, and is not within the constitutional provision. If any other conclusion were permitted then the property would only be used for charitable purposes in those years when there were profits which could and would be used for charitable purposes, and in the years when there were no such profits the property would not be used for such purposes. It is, however, contended by my brethren that notwithstanding the fact that appellant conducts an ordinary social club of which the buffet or saloon, the restaurant, and the billiard and card rooms are a part, yet in view that the foregoing enterprise is conducted in connection with appellant's lodge, and because the sales of liquor, etc., are only for the use and benefit of lodge members, therefore "all that can be claimed . . . for these sales is that they are merely incidental to the use made of the building for charitable purposes."

With regard to this claim I may say that I have read not only once, but repeatedly, the findings of fact, and after doing so I fail to find any particular charitable use or purpose to which the building in question is devoted except that the third floor is used for a lodge—that is, on that floor the members hold their lodge meetings. All that is contained in the findings with regard to the lodge rooms is as follows: "That said plaintiff also occasionally uses its lodge meeting room on the top floor of said building for dancing and other social purposes from which use of its said lodge meeting room it derives no revenue whatever." In view that the building has only three floors, the first of which is used for a saloon and the second for a restaurant and for billiard, card and reading rooms, I am somewhat at a loss to know just how the carrying on of a saloon and restaurant business and the maintenance of a billiard and card rooms, which occupy two-thirds of the building, "are merely incidentals to the use of the building for charitable purposes," as stated in the prevailing opinion. If it be granted that the lodge room is used exclusively for

charitable purposes, by what rule of law or construction can the saloon and restaurant business be classed as merely incidental to the lodge or lodge room? If the entire building were used for lodge meetings or lodge purposes it might well be held to be exempt from taxation. Is it not pertinent to inquire, however, since when has a saloon and restaurant business become merely incidental to a lodge which is purely a charitable institution? In view that the record fails to enlighten me upon this point, it may perhaps not be out of place for me to state that for nearly a third of a century I have enjoyed the privilege of being a member in good standing in a few of the principal secret orders of this country which by the courts have frequently been held to be purely charitable institutions. During all of the time aforesaid I have not only been a member of the subordinate lodges, but have likewise been a member of the grand bodies under whose control the subordinate lodges exist, and during all that time I have never heard it claimed by any member of any order that the saloon or restaurant business, or either, is merely incidental to the principal purposes for which a lodge is created and maintained. Nor can I find a single case in the books where such a doctrine has ever been contended for or allowed. I make this statement with due deference to the judgment of my esteemed associates, who, it seems, are of the opinion that there are numerous cases which sustain their conclusion that the business conducted on the first and second floors of the building in question is merely incidental to the principal purposes for which appellant is organized. Let it be conceded that the billiard and card tables which are used merely for exercise, recreation and innocent amusement are only incidentals to a modern lodge. But such instrumentalities when used by lodge members are merely used occasionally and then only for the purposes just stated. Can it be said, however, that a saloon in which bartenders and porters are employed and in which all kinds of liquors are constantly sold is, or can ever become, a mere incident to a charitable institution known as a lodge which confessedly has no business whatever to which the sale of liquors can be an incident? Moreover, under the

facts disclosed in this case, the saloon and the restaurant are conducted for the benefit of the members of the lodge, not as lodge members or inmates of a charitable institution, but as individuals and citizens. Surely no one will contend that from the standpoint of lodge members merely they have special need for all kinds of spirituous liquors. No doubt the members of appellant need both food and drink, but they do not require either because of their membership, but for the same reason that all of us mortals need those things—to sustain life. Neither the saloon nor the restaurant business, therefore, has any necessary connection with the lodge whatever, but is merely a business venture that is intended for the benefit of those who happen to be members of the lodge, and in case there are any "net receipts" or profits, they are paid into the general fund of the lodge. It is my deliberate judgment that there is not a single well-considered case among all of those that are quoted from in the prevailing opinion that under a state of facts and circumstances like those in the case at bar supports the conclusion reached by my brethren. I shall not pause to review those cases here. It must suffice to say that with few exceptions the cases referred to by Mr. Justice McCARTY are decided right and are sound upon principle. It, however, requires only a cursory reading of some of them, and especially of the case of *Book Agents, etc., v. Hinton,* 92 Tenn. 188, 21 S. W. 321, 19 L. R. A. 289, which is quoted from by my brother, to see that the prevailing opinion in that case is not based on a sound legal principle, although it be conceded that the conclusion reached by the majority of the court is right. The dissenting opinion in that case states the doctrine upon which the exemption from taxation is based. There are also a number of cases that are cited by my associates that strain the law to its utmost limits to find some reason for permitting the claim for exemption to prevail. Of that class the case of *First Unitarian Soc. v. Hartford,* 66 Conn. 368, 34 Atl. 89, is a striking example. Then there are the cases of *Cathedral of St. John v. County Treasurer,* 29 Colo. 143, 68 Pac. 272; *Yale University v. New Haven,* 71 Conn. 316, 42 Atl. 87, 43 L. R. A. 490;

*People v. Feitner,* 168 N. Y. 494, 61 N. E. 762; *State v. City of Elizabeth,* 28 N. J. Law, 103; *Academy, etc. v. Irey,* 51 Neb. 755, 71 N. W. 752; *Curtis v. Odd Fellows,* 99 Me. 356, 59 Atl. 518; *City of Petersberg v. Petersberg Ben. Ass'n,* 78 Va. 431; *Trustees, etc., v. Andover,* 175 Mass. 118, 55 N. E. 841; *Prest., etc., of Harvard Col. v. Cambridge,* 175 Mass. 145, 55 N. E. 844; and *People v. Sayles,* 23 Misc. Rep. 1, 50 N. Y. Supp. 8—about all of which are cited in the prevailing opinion which must be considered. In nearly all of those cases the courts were actually dealing with some matters which although in some respects outside of the main purposes of the particular charitable institution, were, nevertheless, so connected with its principal objects and purposes that it was held such matters were really incidental to the principal purposes of the particular charitable institution. All of said cases in their facts and circumstances are, however, readily distinguishable from the facts and circumstances of the case at bar. In all of them the business or calling in question had some direct bearing or influence upon, or in some way supported the main purpose for which the society owning the property was organized and maintained. But, as I have pointed out, in this case the club rooms, the saloon and restaurant were primarily established and are maintained for the sole benefit of the members of appellant not as lodge members or inmates of a charitable institution, but as individuals of the community at large. If it were or ever became necessary for the convenience and benefit of the members of appellant that saloons and restaurants should be established and conducted upon the same plan and for the same purpose in different parts of Salt Lake City, why would not all of those saloons and restaurants be mere incidentals to the main object of appellant and so long as the profits, if any there were, arising from the business were paid into appellant's treasury, why would not the property, including the saloons and restaurants, if owned by appellant, be exempt from taxation? Would there be any difference in principle from the exemption allowed in this case and the exemption in the case just supposed? I confess that I am unable to perceive such a

difference, if one exists. Could it not just as well be claimed that the property upon which the different saloons and restaurants are conducted is merely incidental, and therefore used exclusively for charitable purposes, as it can be that the property in question is so used? My associates, however, seem to lay some stress upon the fact that appellant, during the last five years, has contributed a considerable sum actually to charity. True, it is said in the prevailing opinion that the amount actually paid is not of controlling importance. The question is, not what amount, if any, has appellant contributed to charity. The sole question is, Is its property used exclusively for charitable purposes?

The mere fact that an individual, a corporation, or a society disburses either much or little of its money or property for charity is no reason why either should be exempt from supporting the government. To pay one's just proportion of the taxes to support the government, while not an act of charity, is, nevertheless, an act quite commendable. Neither do I partake of the solicitude expressed by my associates that if the exemption in this case is not allowed "practically every private hospital, and, with but a very few exceptions, every church building erected and used for religious worship within this state would be subject to taxation." Notwithstanding the fact in this connection our common knowledge is appealed to in support of the foregoing contention, I recall no instance, nor are there any given, where a church or any other charitable society or institution has gone into the saloon and restaurant business for the benefit of the members except the appellant. If there is a church or so-called charitable institution in this state, not excepting hospitals, that is engaged in such a business for any purpose whatever, then the property in which such business is conducted should be taxed the same as all other property. When property is not exclusively used for the purposes specified in the constitution it is not exempt, and it can make no difference by whom owned or to what use the proceeds derived therefrom are devoted. In this connection it is insisted that the constitutional provision should receive a liberal construction or application.

I concede that in the administration of the law courts must at times disregard the literal meaning of words. When, however, as in the matter before us now, the people in adopting the constitution have indicated that the language employed by them is to be applied with at least some degree of strictness, the courts have no right to apply it in any other sense. For instance, in the constitutional provision the people have clearly indicated that it is not only the use of property as such, but that it is its exclusive use for charitable purposes that entitles it to be exempt from taxation. Is it possible to expand the phrase "used exclusively" for charitable purposes so as to make property exempt that is beyond all peradventure used for some other purpose? No doubt exempt property may sometimes and for special reasons be used in a manner and for a purpose which seems to deprive it of its exempt character. This is well illustrated by the occasional use of a church building for lectures, concerts, and other similar purposes. Such uses are, however, merely occasional, and are, strictly speaking, a part of or at least directly connected with the purpose to which the building is devoted. Would any one seriously contend however that if a church organization undertook to conduct a saloon and restaurant business in the church building, although both were for the use of the members only, that such a building was still used exclusively for religious purposes, and that such use was within the contemplation of those who framed or of those who adopted the constitution? It is urged, however, that if a building may occasionally be used for a particular purpose, or that if a church or charitable organization may on certain occasions provide a dinner or a lunch from which a profit is derived which is devoted to church or charitable purposes, that therefore it may do so every day. In other words, that there is no distinction in principle in selling one meal and in selling any number as a continuous business, provided the proceeds derived from such sales are used for charitable purposes. While at first blush this may seem plausible, yet in my judgment it is not sound. In case of the sale of one meal, or an occasional meal, the competition with the taxpayer who

is engaged in the business of selling meals is nil and not worthy of consideration. It may also be said to be merely incidental, and thus be permitted by a fair and reasonable construction of the constitutional provision. When, however, the selling of food and drink is conducted as a daily business and to a large number of persons, as is the case here, competition with the taxpayer is inevitable. Let us see where the permission of such a method of conducting business may lead. If one charitable or church organization may provide the necessaries of life, such as food and drink for its members without forfeiting the right to the exemption, then all other church and charitable organizations may do so. Moreover, why should these organizations limit the business to food and drink? Why not provide the members with all the necessaries of life, and out of the profits pay the expenses of conducting the business and the organization and devote the profits, if any, to such charitable purposes as the organizations may elect. In this way it would be possible to do a vast amount of business without exposing the property in which it was carried on or the property used in the business to the burden of taxation. If the conduct of business in this manner were ultimately interfered with by the courts, it would not be because it would be contrary to the constitutional provision in question, as here construed, but because such a great amount of property would be thus withdrawn from the list of assessable property that such method of doing business without taxation would be intolerable. If my associates are right, however, what is there that will prevent every church and every charitable organization from conducting eating and drinking establishments, and if they so desire, any other business enterprise, so long as the business is limited to the members and the net profits are devoted to some charitable purpose? I confess that I am unable to see why the business should be limited to the members so long as the net proceeds are directed as aforesaid. The foregoing, if permitted, would manifestly ignore at least one of the purposes of the constitutional limitation, which is that no property shall be exempt which comes into competition with property that is taxable.

I am forced to the foregoing conclusion because it is said by one of my associates that inasmuch as it would not be in violation of the constitutional provision if appellant's members were permitted to "eat and drink something in the building" sometimes, that it would not be so if they were permitted to do so daily, nor would it make any difference what they ate or drank. I am not contending that it would make any difference whether they drank one kind of liquor or another, or ate one kind of food or another, but I do contend that it makes a difference whether the appellant is selling food and drink as a business. I contend that no amount of reasoning can make the conducting of a restaurant and saloon business an incident of either a charitable or religious organization. If the conduct of such a business is a mere incident, regardless of by whom, or how, or where conducted, then there is no business that cannot be made an incident. In such an event I am prepared to understand the apostle's meaning when he said: "For charity shall cover the multitude of sins." It may be doubted, however, whether the apostle intended his words to cover a modern saloon, even in Zion, although the same passed under the innocent name of "buffet." But notwithstanding the doubt referred to, and notwithstanding my solemn protest, it is now judicially determined, in this jurisdiction at least, that a modern saloon and restaurant may, under certain conditions, be classed as charitable institutions, and as such come within the constitutional provision that only property used exclusively for charitable purposes shall be exempt from taxation.

Before leaving this subject, however, I desire to refer to one or two cases in addition to those I have already mentioned. One of these is the case of *Trustees, etc., of the B. P. O. E. v. Green Bay,* 122 Wis. 452, 100 N. W. 837, 106 Am. St. Rep. 984. In that case the Supreme Court of Wisconsin has recently passed upon facts which in all essential points are just like those in the case at bar. That court, however, held that all property that is used for the purposes specified in the findings of fact in this case is not

within the constitutional provision I have quoted, and is
therefore taxable.    In the course of the opinion it is said:

"While some of the aims of the order are the promotion of benevo-
lence and charity, it is the avowed and obvious purpose of the order
to maintain this clubhouse as a suitable place for the members
and their families to congregate for entertainment, amusement, and
to provide refreshments.    The bestowal of these privileges and
benefits is not of a benevolent or charitable character.    These
privileges and benefits which every person may secure for him-
self and family for a consideration, according to his tastes, wishes
and means, and which the members of this lodge thus provide by
co-operation as a body for their mutual advantage, are not of a
benevolent character, and serve no such purpose."

It is true that the court in that case held that the lodge
itself was not a charitable institution within the purview
of the constitutional provision aforesaid, and no doubt it is
for this reason that the case is not referred to by my breth-
ren in the prevailing opinion.    That case is the only one
that, after a most diligent search, I have been able to find
in which the particular character of a club such as is main-
tained by appellant is judicially discussed.    My brethren seem
to be of the opinion that, inasmuch as the Wisconsin court
held that the lodge itself was not a charitable body, therefore
that case has no bearing whatever upon the case at bar.
The conclusion thus reached by my associates, to my mind,
clearly illustrates that the position assumed by them in this
case is thoroughly fallacious.    It may be that a corpora-
tion, society, or lodge, which owns, occupies, and uses prop-
erty is not a charitable institution, and yet the property
owned, occupied and used, may be used exclusively for char-
itable purposes.    Nor does it follow by any means that be-
cause certain property is owned, occupied, and used by a
purely charitable institution that therefore such property
is exempt from taxation.    I repeat that it is the use of the
property as such for charitable purposes, and not by whom it
is owned, occupied or used, or whether it yields any profits,
and if so whether they are devoted to charity, that is deter-
minative of the question of exemption.    The Wisconsin Su-
preme Court is the only one, so far as I am aware, that has
directly considered and passed upon the question of whether

property upon which a saloon and restaurant are conducted in connection with an organization known as a lodge can under any circumstances be considered as used exclusively for charitable purposes. While the Wisconsin court went beyond the club features in that case, such was not necessary to the decision, any more than it is necessary to do so in this case. In my judgment the question of whether appellant is organized merely for lodge purposes, and as such is a charitable institution or not, is controlling here. It may well be conceded that the great weight of authority is to the effect that as a lodge appellant is a charitable institution. As we have seen, however, so have the Masons, Odd Fellows, Knights of Pythias, and similar orders been held to be purely charitable institutions. Yet the Supreme Court of Iowa, in the case before referred to, held that not all property owned, occupied and used by this charitable institution is exempt from taxation. The Wisconsin and Iowa cases contain not only the only direct judicial declarations that we have upon the questions involved in this case, but, in my judgment, the reasoning and conclusions reached by those courts, upon principle, are sound and unanswerable, and should be followed rather than ignored.

The only question that remains is, What should the judgment in this case be? This court is committed to the doctrine that for taxing and exemption purposes different floors or stories of a building may be segregated. The court is, however, also committed to the rule universally followed and applied that the presumption is that all property is taxable and that the burden of showing that particular property is exempt from taxation is upon the person claiming the exemption. In this case the entire building is claimed as exempt, and the record discloses that it was assessed as a whole. It is, therefore, impossible at this time to determine the value of the particular floors which constitute the lodge meeting room from the value of the saloon and restaurant conducted in the two floors below. Under such circumstances there is but one thing to do, which is to hold that appellant

has failed to establish that the property is entitled to the exemption, and the judgment of the lower court therefore should be affirmed. I need not specifically refer to the authorities in support of this conclusion. Many of them are found in the authorities cited both by myself and by my associates. The judgment, therefore, should be affirmed, with costs to respondent.